**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Natasha Barreto, individually and on behalf
of all others similarly situated,

                              Plaintiffs,

              -against-

Westbrae Natural, Inc.,

                              Defendant.

Case No. 1:19-cv-09677-PKC


ORAL ARGUMENT REQUESTED


<u>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S**</u>
<u>**MOTION TO DISMISS FIRST AMENDED COMPLAINT**</u>


FOLEY HOAG LLP

August T. Horvath
(*ahorvath@foleyhoag.com*)
1301 Sixth Avenue, 25th Floor
New York, New York 10019
Tel:  (646) 927-5500
Fax:  (646) 927-5599

*Attorneys for Defendant Westbrae*
*Natural, Inc.*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

FACTUAL BACKGROUND ..............................................................................................4

PLAINTIFF'S ALLEGATIONS .........................................................................................6

ARGUMENT ......................................................................................................................8

**I.**      Plaintiff's Attempt to Enforce Her Interpretation of the FDCA Is Preempted ...................8

**II.**     Plaintiff Fails to Allege a Plausible Deception .................................................................12

      **A.**      Legal Standard .............................................................................................12

      **B.**      No Reasonable Consumer Believes that Identifying "Vanilla" as a Flavor Has Any of the Implications Alleged by Plaintiff ..........................................13

      **C.**      Plaintiff Has No Basis for Her Assumptions about the Product Ingredients ........15

            **a.**      Plaintiff's Assumptions Based on the Product Label Are Invalid ............15

            **b.**      Plaintiff's Chromatography Analysis Is Worthless ...................................17

**III.**    Plaintiff Fails to Plead with the Requisite Particularity....................................................20

**IV.**     Plaintiff's Ancillary Causes of Action are Improperly Pled and/or Inappropriate ...........21

      **A.**      Plaintiff Fails to State a Claim for Breach of Express Warranty or Implied Warranty of Merchantability...................................................................21

      **B.**      Plaintiff Fails to State a Claim for Negligent Misrepresentation..........................22

      **C.**      Plaintiff Fails to State a Claim for Fraud ..............................................................23

      **D.**      Plaintiff Fails to State a Claim for Unjust Enrichment .........................................24

**V.**      Plaintiff Lacks Standing to Seek Injunctive Relief...........................................................25

CONCLUSION..................................................................................................................25

B5027443.4

## **TABLE OF AUTHORITIES**

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................ 20

*Basis Yield Alpha Fund (Master) v. Goldman Sachs Grp., Inc.*,
    115 A.D.3d 128 (App. Div. 2014) ................................................................ 23

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) .................................... 20

*Bowring v. Sapporo U.S.A., Inc.*,
    234 F. Supp. 3d 386 (E.D.N.Y. 2017) ........................................................ 24

*Buonasera v. Honest Co., Inc.*,
    208 F. Supp. 3d 555 (S.D.N.Y. 2016) ........................................................ 24

*Campbell v. Freshbev LLC*,
    322 F. Supp. 3d 330 (E.D.N.Y. 2018) ........................................................ 13

*Campbell-Clark v. Blue Diamond Growers*,
    No. 1:18-cv-5577-WFK (E.D.N.Y. Dec. 17, 2019) .................................... 13

*Chill v. Gen. Elec. Co.*,
    101 F.3d 263 (2d Cir. 1996) ........................................................................ 24

*Cohen v. S.A.C. Trading Corp.*,
    711 F.3d 353 (2d Cir. 2013) ........................................................................ 23

*Davis v. Hain Celestial Grp., Inc.*,
    297 F. Supp. 3d 327 (E.D.N.Y. 2018) ........................................................ 25

*Elkind v. Revlon Consumer Prods. Corp.*,
    No. 14-2484, 2015 U.S. Dist. LEXIS 63464, (E.D.N.Y. May 14, 2015) ................................ 25

*Fermin v. Pfizer Inc.*,
    215 F. Supp. 3d 209 (E.D.N.Y. 2016) ........................................................ 12

*Fink v. Time Warner Cable*,
    714 F.3d 739 (2d Cir. 2013) ........................................................................ 12

*Freeman v. Time, Inc.*,
    68 F.3d 285 (9th Cir. 1995) ........................................................................ 12

*Hidalgo v. Johnson & Johnson Consumer Cos., Inc.*,
    148 F. Supp. 3d 285 (S.D.N.Y. 2015) ........................................................ 25

ii

*In re Frito-Lay North America All Natural Litigation,*
  12-MD-2413, 2013 U.S. Dist. LEXIS 123824, (E.D.N.Y. Aug. 29, 2013)....................... 21, 24

*In re Trader Joe's Tuna Litig.,*
  289 F. Supp. 3d 1074 (S.D. Cal. 2017) .................................................................. 9, 10

*International Prods. Co. v. Erie R. R. Co.,*
  244 N.Y. 331 (1927) ................................................................................................... 22

*J.A.O. Acquisition Corp. v. Stavitsky,*
  8 N.Y.3d 144 (2007) .................................................................................................... 22

*Kimmell v. Schaefer,*
  89 N.Y.2d 257 (1996). ........................................................................................... 22, 23

*Lerner v. Fleet Bank, N.A.,*
  459 F.3d 273 (2d Cir. 2006) ........................................................................................ 23

*Mandarin Trading Ltd. v. Wildenstein,*
  16 N.Y.3d 173 (2011) ................................................................................................... 22

*McBeth v. Porges,*
  171 F. Supp. 3d 216 (S.D.N.Y. 2016) .......................................................................... 23

*Orlander v. Staples, Inc.,*
  802 F.3d 289 (2d Cir. 2015)......................................................................................... 12

*Patane v. Nestle Waters North America, Inc.,*
  314 F. Supp. 3d 375 (D. Conn. 2018)................................................................. 9, 10, 11

*Patane v. Nestle Waters of North America, Inc.,*
  369 F. Supp. 3d 382 (D. Conn. 2019)......................................................................... 11

*PDK Labs, Inc. v. Friedlander,*
  103 F.3d 1105 (2d Cir. 1997).......................................................................................... 9

*Price v. L'Oreal USA, Inc.,*
  No. 17-civ-0614, 2017 U.S. Dist. LEXIS 165931 (S.D.N.Y. Oct. 5, 2017) ............................. 24

*Reyes v. Crystal Farms Refrigerated Distrib. Co.,*
  No. 18-cv-2250, 2019 U.S. Dist. LEXIS 125971 (E.D.N.Y. July 26, 2019)........................... 13

*Sarr v. BEF Foods,*
  No. 18-cv-6409-ARR, 2020 U.S. Dist. LEXIS 25594 (E.D.N.Y. Feb. 13, 2020)............. 13, 24

*Schwartzco Enterprises LLC v. TMH Mgmt., LLC,*
  60 F. Supp. 3d 331 (E.D.N.Y. 2014)........................................................................ 23

iii

*Solak v. Hain Celestial Grp., Inc.*,
   No. 3:17-cv-0704-LEK-DEP, 2018 U.S. Dist. LEXIS 64270 (N.D.N.Y. April 17, 2018) ...... 13

*Tomasino v. Estee Lauder Cos., Inc.*,
   44 F. Supp. 3d 251 (E.D.N.Y. 2014) .................................................................................. 25

*Verzani v. Costco Wholesale Corp.*,
   No. 09-cv-2117, 2010 U.S. Dist. LEXIS 107699 (S.D.N.Y. Sept. 28, 2010),
   aff'd, 432 Fed. Appx. 29 (2d Cir. 2011) ......................................................................... 9, 12

*Weisblum v. Prophase Labs, Inc.*,
   88 F. Supp. 3d 283 (S.D.N.Y. 2015) .................................................................................. 24

**Statutes & Regulations**

10 N.Y.C.R.R. § 5-6.3 ............................................................................................................. 11

21 C.F.R. § 101.22 .................................................................................................................. 19

21 C.F.R. §172.515(b) ............................................................................................................ 19

21 U.S.C. § 337 ............................................................................................................. 9, 11, 19

21 U.S.C. § 343 .................................................................................................................. 11, 15

Fed. R. Civ. P. 9(b) ................................................................................................................ 3, 23

Fed. R. Civ. P. 11 ...................................................................................................................... 6

New York GBL §§ 349-350 ............................................................................................. 2, 9, 12

Sherman Food, Drug, and Cosmetic Law, H.S.C. §§ 109875 .................................................. 11

U.C.C. § 2-314 ........................................................................................................................ 22

## **INTRODUCTION**

This case is about Westbrae Natural Inc.'s ("Westbrae's") WestSoy® Unsweetened Vanilla Soymilk, and whether its "vanilla" designation on the front label communicates to consumers an extensive series of implied messages about the source of the vanilla flavor in the soymilk despite the clear identification of "natural vanilla flavor with other natural flavors" on the ingredients statement.  Plaintiff alleges that it does, and then further alleges – unsupported by any factual basis – that the actual contents of WestSoy soymilk contradict those implied messages.  Common sense and common knowledge compel the opposite conclusion – that consumers understand "vanilla" as a flavor designator, not as an ingredient claim.  A reasonable consumer would not perceive the misleading messages alleged by Plaintiff to be communicated about the products, and the remedies suggested by Plaintiff would make no difference in a reasonable consumer's interpretation of the packaging.

Despite extensive allegations, many of them unrelated to the facts and substantive allegations of the lawsuit, Plaintiff has failed to plead any plausible basis on which a consumer would either (1) receive any specific message from WestSoy soymilk labeling as to the source of its vanilla taste, or (2) care what the source is, so long as the vanilla soymilk tastes of vanilla. Consumers do not desire vanilla bean extract for its nutritive properties, for it is not a nutrient – it is strictly a flavoring.  Some consumers prefer that flavorings and other ingredients be naturally derived, but Plaintiff does not dispute that this is true of the flavorings used in WestSoy soymilk, so that the label claim "natural vanilla flavor" is truthful and accurate.

Even if Plaintiff could establish that the product's labeling communicates what she claims it does, Plaintiff has failed to allege plausibly that the contents of the product differ from what is allegedly represented.  Plaintiff has no basis for anything that she alleges about the

1

contents of the product other than the occurrence of one term – "with other natural flavors" – in its ingredient statement, to which Plaintiff attaches unwarranted interpretations and exaggerated significance, and a chromatography analysis that is self-evidently worthless.

Plaintiff's substantive allegations are concerned almost entirely with accusations that Westbrae violated the Food, Drug & Cosmetic Act (FDCA), as interpreted by Plaintiff. Plaintiff's entire basis for asserting consumer deception is that a violation of the FDCA is, *per se*, a deceptive practice under state consumer protection laws such as New York's GBL §§ 349-350. This theory is fatally flawed, for two primary reasons. First, Plaintiff incorrectly interprets the FDCA. She mischaracterizes and misconstrues the regulations under the statute, and relies on unreliable third-party sources and her own non-expert intuition for her interpretations. In fact, Westbrae's labels comply with the FDCA. Second, and moreover, the parties should not be litigating whether Westbrae violated the FDCA before this Court in the guise of New York GBL §§ 349-350 claims. Not only are alleged violations of the FDCA not *per se* deceptive practices under GBL §§ 349-350, but Plaintiff is expressly preempted from attempting to enforce the FDCA privately by asserting state-law duties that are tantamount to FDCA compliance.

To plead a cause of action, Plaintiff would have to step away from alleged technical violations of the FDCA, and plausibly plead that a reasonable consumer would interpret the phrase "vanilla soymilk" to mean that all of the vanilla flavor in the soymilk comes from vanilla bean extract, yet not interpret the phrase "vanilla flavored soymilk with other natural flavors" – which Plaintiff contends could cure both the regulatory non-compliance and any alleged deception – as meaning the same thing as to the source of the vanilla flavor in the soymilk. Plaintiff is unable to do this. Plaintiff's strategy with this, and with the over 70 other lawsuits her counsel have filed against producers of vanilla-containing products in the past year, is to spot

2

what she believes is a technical violation of FDA flavoring regulations and then hold up food companies for expensive settlements.

Further, Plaintiff's claims sound in fraud, including a specific count of fraud, and therefore must be pled with the particularly required by Fed. R. Civ. P. 9(b).  There are almost no allegations specific to WestSoy soymilk products in the Complaint, most of which is copy-and-pasted from one of Plaintiff's counsels' many related lawsuits, and contains discourses on the history of vanilla, sweeping generalizations about the food industry's purportedly deceptive labeling practices, historical FDA enforcement correspondence referring to unrelated products and parties, and so forth.  Plaintiff's factual allegations about Westbrae's conduct and the contents of WestSoy Organic Unsweetened Vanilla Soymilk are based on unfounded speculation about the meaning of its ingredient statement.

Plaintiff pleads assorted secondary causes of action that should all fail together with her core false-advertising claims, but in the alternative, should be dismissed because they are inappropriate for the situation alleged by Plaintiff, who therefore does not and cannot plead necessary elements of these causes of action.  Plaintiff also pleads for injunctive relief, which should be dismissed because, by her own admission, she is now aware of the alleged deception, and are at no risk of being deceived and injured in the future.

## FACTUAL BACKGROUND

Soymilk has been consumed in China since at least the 1700s, and has become popular in the United States since the 1990s.[1]  Westbrae Natural produces natural and vegetarian products, including soymilk under the WestSoy® brand.  WestSoy soymilk is sold in several varieties, including Organic Unsweetened Soymilk, which comes in regular (no flavor specified) and Vanilla varieties.  This case concerns WestSoy Organic Unsweetened Vanilla Soymilk (the "Product,") which is differentiated from other WestSoy soymilks by being certified USDA organic, and having no added sugar.  Soy has a slightly astringent taste relative to the dairy milks with which Americans are more accustomed, and as an alternative to sweetening, soymilk producers often flavor their products lightly with vanilla.  The result is not a strong vanilla flavor, but a hint of vanilla to balance the product's overall taste.  As the Product's web page states, it "is made from whole organic soybeans and a touch of natural vanilla."[2]

Developing the taste profile of a packaged food, such as the Product, often entails the selection and combination of a variety of flavor and non-flavor ingredients that will produce a distinctive, satisfying, consistent, and affordable product that will delight consumers.  Plaintiff's main argument, that flavoring a non-dairy milk with a flavor such as vanilla should be as simple as adding vanilla extract to the unsweetened version, is too simplistic a caricature of the food product development process to be believed by reasonable consumers.  Adding layers of flavors, such as other natural flavors, results in a robust, well-rounded flavored non-dairy milk alternative

---

[1] W. Shurtleff & A. Aoyagi, HISTORY OF SOYMILK AND OTHER NON-DAIRY MILKS (1226 TO 2013) (Soyinfo Center 2013).

[2] http://www.westsoymilk.com/products/organic-unsweetened/organic-unsweetened-vanilla/.

that some customers prefer over other brands.  To this end, many producers flavor their vanilla soymilk not just with vanilla extract, but with a package of flavorings of which vanilla extract is the predominant, but not the only, flavoring component.  These flavoring packages often are carefully developed by specialized flavor suppliers, with their proprietary formulations kept as a trade secret.  Generically, these packages are termed "vanilla with other natural flavors," or "vanilla WONF."  Most, and sometimes all, of the secondary flavorings included in these flavor packages do not taste of vanilla, but contribute additional, subtle flavor notes to the finished product.  Developing these sensory profiles is a whole branch of applied science, whose practitioners gives names to characteristics such as roundness, smoothness, creaminess, nuttiness, and others, that contribute to a soymilk with a rich, complex, and differentiated flavor profile.

Another important purpose of multiple flavor ingredients is often to provide consistency in the product's taste.  Consumers want not only a great tasting soymilk; they also want their current carton to taste just like the previous ones.  Plaintiff admits that a combination of flavorings, whether they taste of vanilla or not, are added to help ensure "greater consistency in pricing, availability and quality."  FAC ¶ 49.  The inclusion of such flavors does not mean that there is not enough vanilla extract to supply the vanilla taste of the final product, or that the soymilk would not still have that "touch" of vanilla if the other natural flavors were removed.  It simply helps produce a satisfying, consistent, high-quality product.

For products that incorporate a vanilla WONF package, the flavor supplier, without disclosing its exact ingredients, certifies that the flavoring meets any requirements set by the soymilk producer, such as being all-natural, organic, and so forth, as well as providing guidance on the declaration of the flavoring in the ingredient statement.  The soymilk producer creates

labeling for the soymilk that meets the requirements of the Food, Drug & Cosmetic Act and also is truthful and transparent to consumers.

Plaintiff contends that the vanilla flavor in WestSoy soymilk does not all come from natural vanilla flavor. Plaintiff has no basis for this claim. On the contrary, just from reviewing the Product label and its page on the WestSoy web site, Plaintiff should have realized that the Product indeed does derive its vanilla flavor from natural vanilla extract. First, the ingredient statement clearly differentiates "natural vanilla flavor" (i.e., vanilla extract) from "other natural flavors," indicating that the other natural flavors are *not* other *vanilla* flavors, as Plaintiff contends. Second, the Product is USDA certified Organic, which means that all ingredients (with a few exceptions not relevant here) must be not only natural, but organically derived. Plaintiff does not dispute the Product's organic status, yet her allegations about its ingredients are inconsistent with its organic status, and she fails to reconcile this. These indicators on the Product package should have alerted Plaintiff that her suspicious are not only unfounded, but incorrect. The Product's web page, which Plaintiff reviewed or should have reviewed during even the minimal pre-Complaint investigation required by Fed. R. Civ. P. 11, repeats these facts, and additionally states that the Product contains "a touch of natural vanilla." This unambiguously establishes that vanilla bean extract is used in the product and that it is present only in small amounts, providing the light hint of vanilla typically used in soymilks.

## PLAINTIFF'S ALLEGATIONS

None of the above-described sophisticated process of developing a great tasting soymilk fits into Plaintiff's simplistic, cynical worldview. Plaintiff alleges that labeling a product as "vanilla soymilk" on the front label without the terms "flavored" or "other natural flavors,"

regardless of the nature or other context of the representation, implies, to consumers, <u>all</u> of the following:

1.      vanilla is the characterizing flavor (FAC ¶ 58);

2.      vanilla is contained in a sufficient amount to flavor the product (FAC ¶ 58);

3.      the flavor is derived from vanilla extract or vanilla flavoring (FAC ¶ 66);

4.      no other flavors simulate, resemble, reinforce, extend or enhance flavoring from vanilla or permit less real vanilla to be used (FAC ¶ 58); and

5.      vanilla from vanilla beans is the exclusive source of flavor (FAC ¶ 58).

Except for #1, it is implausible that reasonable consumers perceive any, let alone all, of these meanings from the mere designation of a product as "vanilla soymilk."  Some of the implied meanings contradict each other:  vanilla flavoring, as Plaintiff admits, may come from sources other than vanilla beans (FAC ¶ 87), so the third alleged meaning is inconsistent with the fifth. Indeed, vanilla flavor, by definition, *must* come from a vanilla flavoring; otherwise it would taste like something else.  The second and fourth implied meanings are too vague ever to be proven or disproven – who, if not consumers through their purchasing decisions, is to be the judge of whether there is a "sufficient amount [of vanilla] to flavor the product"?  There is no accepted standard for such an amount, and in a soymilk, which consumers expect to taste predominantly of soymilk with only a delicate hint of vanilla, the amount may be very low.  If "simulate, resemble, reinforce, extend or enhance" in the fourth imputed meaning are not synonyms, what does each mean?  Moreover, Plaintiff alleges not the slightest factual basis to contend that consumers read "vanilla soymilk" to mean anything other than the first meaning – that the soymilk has a vanilla taste. No reasonable consumer would interpret the flavor designator

"vanilla" as an ingredient claim, let alone interpret the flavor designator as identifying the exclusive botanical source of the vanilla taste in the soymilk.

Plaintiff alleges that these implied statements are deceptive because, allegedly, there are other flavorings in the products besides vanilla extract; there are simulated vanilla flavorings in the products; and/or there is "de minimis" vanilla extract in the products, insufficient to impart vanilla flavor.  The main basis for these allegations is that only the ingredient lists on the side or back labels of the Product include the items "with other natural flavors." FAC ¶¶ 55, 59.  For the second allegation, Plaintiff cites and attaches a gas chromatography/mass spectrometry analysis, whose interpretation is entirely her attorneys', with no support from the researcher who conducted the analysis or any other expert.  FAC ¶¶ 70-97.  As detailed below, this analysis is facially invalid and provides no support for the allegations.

## ARGUMENT

### I.      Plaintiff's Attempt to Enforce Her Interpretation of the FDCA Is Preempted

Plaintiff's Complaint contains no less than 22 citations to chapter 21 of the Code of Federal Regulations implementing the FDCA, alleging that WestSoy's packaging and labeling are not in compliance with regulations promulgated under the FDCA.  FAC ¶¶ 55-69, 98-107, 115.  This does not count the further references to FDA regulations in seven of its eight exhibits, which are outdated FDA correspondence with unrelated parties concerning vanilla flavor in ice cream, not soymilk.  Dkt. 14-1 at 1-2, 12-18.  Much of the Complaint is spent arguing the intricacies of FDA regulations as they apply to various categories of vanilla flavored products. The only factual bases for Plaintiff's allegations that the WestSoy soymilk packaging deceives consumers are conclusory allegations that any products not conforming to FDA regulations, as interpreted by Plaintiff, are deceptive.

8

This focus on food and drug regulations as the sole basis for Plaintiff's allegations of consumer deception reveals the Complaint for what it is:  Plaintiff's attempt to privately enforce the FDCA, filed because Plaintiff's counsel believes it has spotted a technical violation of FDA regulations.  But Plaintiff is not the FDA, and is neither competent to interpret FDA regulations nor empowered to enforce them.  The right to enforce the FDCA rests exclusively with the FDA. *See* 21 U.S.C. § 337(a); *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1113 (2d Cir. 1997) (there can be no private cause of action if a plaintiff's "true goal is to privately enforce alleged violations of the FDCA"); *Verzani v. Costco Wholesale Corp.*, No. 09-cv-2117, 2010 U.S. Dist. LEXIS 107699, at *8 (S.D.N.Y. Sept. 28, 2010) ("The FDCA lacks a private right of action and therefore [a plaintiff] cannot rely on it for purposes of asserting a state-law consumer claim under G.B.L. § 349"), aff'd, 432 Fed. Appx. 29 (2d Cir. 2011).

Not only can Plaintiff not explicitly seek to enforce the FDCA directly, she also cannot do so, under New York law, under the guise of a state-law cause of action.  Such claims are impliedly preempted by the federal statute.  "Where a state law claim would not exist but for a FDCA regulation, [21 U.S.C.] § 337(a) impliedly preempts the claim."  *Patane v. Nestle Waters North America, Inc.*, 314 F. Supp. 3d 375, 387 (D. Conn. 2018) (dismissing state-law deceptive practices claims where "Each and every one of plaintiffs' claims are wholly FDCA-dependent"). "[I]n New York and many other states, courts have concluded that where a state has not adopted statutes that expressly mirror the FDCA, like California's Sherman Law, a plaintiff's claim that relies on the defendant's failure to comply with federal regulations is impliedly preempted."  *In re Trader Joe's Tuna Litig.*, 289 F. Supp. 3d 1074, 1086 (S.D. Cal. 2017) (dismissing New York G.B.L. §§ 349-350 claims). "Where, like here, a plaintiff's true purpose is to enforce federal

regulations, masquerading as a state-law claim where the state has not adopted a parallel statutory scheme is not sufficient to escape preemption." *Id.* at 1086.

There could be no clearer example of a lawsuit that seeks to enforce the Food, Drug & Cosmetic Act, thinly veiled as a state consumer protection law claim, than this case. Every aspect of Plaintiff's claims centers on one of the many FDA regulations cited throughout the Complaint, with no allegations of any independent state-law duty and no independent supporting factual contentions. The positions Plaintiff adopts with respect to the interpretation of Westbrae's labeling and ingredient statement would be implausible on their own merit, and Plaintiff can argue that they are unlawful only because they purportedly constitute technical violations of the FDA and its implementing regulations. This is truly a case that "would not exist but for a FDCA regulation." *Patane*, 314 F. Supp. 3d at 387.

Plaintiff's core claims, and the almost exclusive focus of her Complaint, is on the phrase "vanilla," which is not just a marketing claim. It is the statement of identity of the Product. "Statement of identity" is the FDA's term of art for the formal name of a product, and it is among the most closely regulated things on a product label. Dozens, if not hundreds, of regulations govern the phrasing of the statement of identity, and manufacturers, given a particular product formulation, have relatively little discretion in how to construct it. This is why Plaintiff must rely so heavily on the FDA regulatory discussion in challenging the phrase "vanilla," but is also why it must be preempted.

An especially instructive case is *Patane v. Nestle Waters North America, Inc.*, 314 F. Supp. 3d 375 (D. Conn. 2018) ("*Patane I*"). In that case, as here, Plaintiff challenged a food's statement of identity – "spring water" in that case – and contended that it was deceptive because, allegedly, it did not conform to the FDCA's requirements, lodging its claims under the laws of

several states, including New York.  *Id.* at 378.  The court initially dismissed the case as to all

states, noting that one preemption provision in the FDCA prevents anyone except the U.S.

government from enforcing its provisions (*id*. at 385, citing 21 U.S.C. § 337(a)), while another

preempts any state from imposing standards of identity that are "not identical" to those of the

FDCA (*id*. at 384-85, citing 21 U.S.C. § 343-1(a)(1)).

The one exception to FDCA preemption is that if a state has enacted food regulations

imposing standards identical to those of the FDCA, then states may enforce those laws, and they

may provide private rights of action to do likewise.  Some states, such as California, have

enacted broad mini-FDCAs (the Sherman Food, Drug, and Cosmetic Law, H.S.C. § 109875,

which may enable plaintiffs to, in effect, enforce the FDCA, if they are careful to plead

violations of the Sherman Law instead of the federal statute.  Some other states have enacted

more limited laws regulating particular foods, again imposing requirements identical to the

FDCA, which may enable plaintiff effectively to enforce the FDCA as to those products – again,

provided they are careful to plead state, not federal, regulatory violations.  The plaintiffs in

*Patane I* thus amended their complaint, and ultimately were allowed to proceed in New York,

among other states, because New York has a limited law defining "spring water" as part of its

Sanitary Code, and does so consistently with the FDCA.  *Patane v. Nestle Waters of North*

*America, Inc.*, 369 F. Supp. 3d 382, 392-93 (D. Conn. 2019) ("*Patane II*"), citing 10 N.Y.C.R.R.

§ 5-6.3.  As to that product, plaintiffs' amendments met the requirement of pleading an

independent state-law duty that could serve as the basis for their claims.  *Id.* at 388.

New York has no comprehensive state food regulatory law like California's Sherman

Law, and it has no special regulation of vanilla or soymilk like its regulation of spring water.

Therefore, under the analysis of *Patane I* and *Patane II*, Plaintiff's attempts to enforce the FDCA

11

are preempted and should be dismissed.  Further, because there exists no independent state law duty that Plaintiff could allege, amendment of the Complaint would be futile and should not be allowed.

Plaintiff does not and cannot allege plausibly that if the WestSoy soymilk label were altered to be fully compliant with FDA regulations as Plaintiff interprets them – for example, merely by being called WestSoy Organic Unsweetened Vanilla Flavored Soymilk – reasonable consumers would interpret its label any differently than they now do.  Plaintiff has no genuine interest in how consumers understand the Product's labeling, and has conducted no investigation into this topic.  This suit is simply part of an attempt to shake down Westbrae, and dozens of other food companies, by catching them in what Plaintiff's counsel mistakenly believes are technical violations of the FDCA.

## II.    Plaintiff Fails to Allege a Plausible Deception

### A.    Legal Standard

To prove conduct is materially misleading as required under New York General Business Law §§ 349 and 350, a plaintiff must demonstrate that "a reasonable consumer acting reasonably under the circumstances" would be misled. *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015).  A court may determine as a matter of law that an allegedly deceptive practice would not have misled a reasonable consumer.  *See Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013).  In so doing, courts consider the entire context of the alleged misrepresentations, including disclaimers and other disclosures elsewhere on the packaging.  *See Fermin v. Pfizer Inc.*, 215 F. Supp. 3d 209, 211-12 (E.D.N.Y. 2016); *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) (considering both large and small print in ad in dismissing consumer protection claims); *Verzani*, 2010 U.S. Dist. LEXIS 107699, at *5-7 (considering entire label on a food tray,

12

which listed each item on the tray and its relative weight, in dismissing case alleging the food

tray's "net weight" label referred only to one item in the tray, not all of the items on the tray).

A recent rash of meritless lawsuits has created a growing body of Rule 12 case law in this

Circuit dismissing challenges to advertising claims because they would not deceive a reasonable

consumer.  *See, e.g., Sarr v. BEF Foods*, No. 18-cv-6409-ARR, 2020 U.S. Dist. LEXIS 25594

(E.D.N.Y. Feb. 13, 2020) (dismissing case against a food label because it would not

communicate a misleading message to a reasonable consumer); *Campbell-Clark v. Blue*

*Diamond Growers*, No. 1:18-cv-5577-WFK (E.D.N.Y. Dec. 17, 2019) (dismissing allegations

that packaging for "nut and rice" crackers implicitly overstated their nut content); *Reyes v.*

*Crystal Farms Refrigerated Distrib. Co.*, No. 18-cv-2250, 2019 U.S. Dist. LEXIS 125971, at *8-

16 (E.D.N.Y. July 26, 2019) (dismissing implausible allegations that "made with real butter" on

mashed potato product implied absence of margarine); *Solak v. Hain Celestial Grp., Inc.*, No.

3:17-cv-0704-LEK-DEP, 2018 U.S. Dist. LEXIS 64270, at *8-36 (N.D.N.Y. April 17, 2018)

(name of "veggie straws" snacks and images of vegetables are truthful in that they imply the

snacks are made from vegetables, and do not reasonably imply that the snacks contain fresh,

whole, ripe vegetables); *Campbell v. Freshbev LLC*, 322 F. Supp. 3d 330, 341 (E.D.N.Y. 2018)

(truthful claim that a juice is "cold-pressed" does not imply that it is only cold-pressed, and not

also processed in any other way).

> **B.    No Reasonable Consumer Believes that Identifying "Vanilla" as a Flavor Has Any of the Implications Alleged by Plaintiff**

The fundamental claim of the First Amended Complaint is that labeling the Product

"vanilla" implies not just a flavor or taste claim, but an ingredient claim.  Plaintiff alleges that

"vanilla" communicates not just any ingredient claim, such as that the soymilk contains vanilla

13

extract, nor even that it is predominantly flavored with vanilla extract, but that it must be
<u>exclusively</u> flavored with vanilla extract.  No reasonable consumer would interpret the "vanilla"
flavor designator on WestSoy soymilk as an ingredient claim, let alone an exclusive ingredient
claim. The flavor designator is there to tell the consumer how the soymilk will taste.  No
reasonable consumer would interpret the flavor designator as identifying the exclusive botanical
source of the vanilla taste in the soymilk.

The plausibility of Plaintiff's key allegation must be considered in the context of what
Plaintiff contends that is required to completely cure the deception – the addition of a label
claiming "[Vanilla] with other natural flavors" or "[Vanilla] flavored with other natural flavors"
on the front label.  FAC ¶¶ 58, 63-64.  If Westbrae added either of these phrases, suddenly,
Plaintiff asserts, no reasonable consumers would get the impression that vanilla extract is the
exclusive source of vanilla flavoring, or even necessarily present in sufficient quantity to lend a
vanilla character to the soymilk, despite the fact that "other natural flavors" could be descriptive
of the other flavors unrelated to vanilla in the Product.  The obvious inference from the WestSoy
soymilk ingredient statement is that the vanilla taste is supplied by natural vanilla flavor and that
other flavor elements are supplied by other natural flavorings.

There is no basis to allege that consumers receive any of Plaintiff's alleged ingredient
claims from the Product's packaging – especially compared with the cure that Plaintiff asserts
would make the label fully compliant and non-misleading.  The actual message communicated to
consumers by "vanilla soymilk" is that the carton they are holding contains soymilk that tastes
like vanilla, as opposed to no flavor or chocolate, for example.

14

C.      **Plaintiff Has No Basis for Her Assumptions about the Product**
**Ingredients**

a.      Plaintiff's Assumptions Based on the Product Label Are Invalid

Plaintiff's first basis for alleging that the Product does not contain the represented type

and amount of vanilla flavoring (i.e., vanilla bean extract in an amount sufficient to impart its

hint of vanilla flavor) is that the ingredient statements of the products include the item "natural

vanilla flavor" rather than "vanilla extract." FAC ¶¶ 72, 74, 77. There are three errors with this

assumption that are each individually fatal.

First, Plaintiff pleads around, but would have to concede, the fact that vanilla extract is a

natural flavor, and that a manufacturer may therefore label a product flavored solely by vanilla

extract with "natural vanilla flavor," or indeed just "natural flavor," as the ingredient

representing vanilla extract in the ingredient statement. Plaintiff evinces her belief that Westbrae

would not use these terms if real vanilla extract were in its soymilk product because the latter

term would be more attractive, but there is no reason to expect that Westbrae conforms to what

Plaintiff considers the most appealing expression of its ingredients. The regulations are clear

that Westbrae can list vanilla extract as a "natural vanilla flavor" in its ingredient list if it so

desires. *See* 21 U.S.C. § 343(i)(2) (spices, flavorings and colors may be designated in ingredient

statements as spices, flavorings and colors, without naming each). "Natural vanilla flavor" and

"other natural flavor" in the ingredient statement is consistent, from a regulatory standpoint, with

either (1) a product whose vanilla flavor component is supplied entirely by vanilla extract, that

also has other natural flavors not tasting of vanilla, or (2) a product whose vanilla flavor

component is predominantly supplied by vanilla extract, that also has other non-vanilla natural

flavors, some of which may taste of vanilla. This, alone, establishes that Plaintiff's allegations

are without basis, because she has no other support for her speculative assumptions about the contents of the Product than the declaration of "other natural flavors" in its ingredient statements.

Second, Plaintiff fails to acknowledge that a product labeled "vanilla" may also contain secondary, non-vanilla flavors.  She alleges that soymilk characterized as vanilla must contain only vanilla-imparting flavors, and nothing else.  FAC ¶¶ 1, 55, 59-63.  There is no basis in law, regulation, or common sense for such a contention.  It is as if Plaintiff alleged that an apple pie, which often contains additional flavors such as cinnamon and nutmeg to complement the main flavor of apple, is required to be labeled "apple and cinnamon and nutmeg pie" because every single flavor present must be disclosed.  Plaintiff fails to acknowledge that that characterizing flavor of a food is only its *main* flavor, not its *only* flavor.  Leveraging this initial false and unfounded assumption, Plaintiff then incorrectly deduces that when a vanilla product's ingredient statement discloses that it contains "other natural flavors," all of those flavors must be vanilla flavors.  Again, this allegation is without basis.  A vanilla soymilk may include other, non-characterizing flavor notes such as creaminess, roundness, or sweetness, provided by other natural flavors, to make up a complex flavor profile.  A non-dairy milk manufacturer can either list vanilla extract and these other natural flavors separately or combine them all as "natural flavors," at its option.

b.    Plaintiff's Chromatography Analysis Is Worthless

Plaintiff introduces a mass spectrometry analysis conducted by Dr. Thomas Hartmann as a purported basis for alleging that there is de minimis vanilla extract and that the vanilla flavor in the Product comes predominantly from non-vanilla-extract vanillin.  Plaintiff alleges that besides the vanillin chemical that primarily imparts vanilla flavor, three other marker compounds - vanillic acid, p-hydroxybenzaldehyde, and p-hydroxybenzoic acid – should be present in vanilla

extract in very small concentrations, ranging from 6% to 0.2% of the amount of vanillin. Plaintiff claims that because Dr. Hartmann's analysis did not detect any of these markers, she have a plausible basis for her allegations with respect to the Product's flavoring.  FAC ¶¶ 70-97.

Significantly, the researcher who performed the mass spectrometry analysis does not back up Plaintiff's claims.  In his report, Dr. Hartmann does *not* say that the chemical markers vanillic acid, p-hydroxybenzaldehyde, and p-hydroxybenzoic acid were not detectable in the sample, nor even that he looked for them.  Nor does he say that any chemicals not detected in the sample necessarily are not present in it.  Such a statement would be irresponsible, because a failure to detect any chemical in an analysis such as this could be the fault of the test itself, especially where the chemicals are expected to be present in very small concentrations in a lightly flavored product such as soymilk.

Without getting into a review of the mass spectrometry's methodology, Plaintiff's analysis suffers from one clear, fatal flaw that renders it worthless.  The analysis has no "control" condition to show what the results would look like if the same method were applied to a soymilk that contains whatever Plaintiff would deem an adequate amount of vanilla extract.  Without such a control condition, Plaintiff has no basis to allege that her test could have detected the tiny amounts of vanillic acid, p-hydroxybenzaldehyde, and p-hydroxybenzoic acid that she asserts should be there.  Plaintiff's assertion that these markers are "not detectable by advanced scientific means" is empty rhetoric, supported by no reason to believe that her test is capable of detecting them.  In fact, there is no basis to believe that Plaintiff's mass spectrometry analysis does not look exactly like the analysis of a soymilk whose vanilla flavor derives solely from vanilla extract.  In addition to this fundamental flaw, the methodology is riddled with other errors, including the stated use of a "vanilla ice cream sample" (which is not the product at issue

17

in this case).  *See* Dkt. 14-1 at 5.  These fundamental, basic errors put the validity of this test into question.

There is ample reason to suspect that the test commissioned by Plaintiff was not capable of detecting the small amounts of vanillic acid, p-hydroxybenzaldehyde, and p-hydroxybenzoic acid expected to be present.  Extracting only the "flavor" components of a product such as soymilk for analysis is complex and imprecise, and there are several ways to do it.  Laboratory equipment cannot tell which chemicals in a substance are "flavors" and which are not, and relative to the main ingredients of soymilk – water and soybeans – the total amount of flavorings is always very small.  As described in the First Amended Complaint and in the laboratory report, the researcher attempts to extract the chemicals of interest using a series of transformations, including vaporization, ionization (FAC ¶¶ 72-73), mixing with other chemicals, extraction with methylene chloride, clarification, drying with anhydrous sodium sulfate, and concentration with nitrogen.  Dkt. 14-1 at 2-3.  These transformations can cause reactions that modify or eliminate some chemicals in the substance.  The researcher must be focused on preserving the specific chemicals of interest in deciding upon the method of extraction.

The researchers who conducted Plaintiff's mass spectrometry analysis were given the wrong assignment.  They were assigned to "extract and analyze the flavors from the product" (Dkt. 14-1 at 4) – not to test specifically for the presence of the chemical markers of concern to Plaintiff, i.e., vanillic acid, p-hydroxybenzaldehyde, and p-hydroxybenzoic acid.  A researcher tasked with determining whether those specific chemicals are present in the product would take special steps to preserve those chemicals during the extraction and preparation process.  The researchers retained by Plaintiff did not do this.  As a result, the researchers' methodology was likely to have failed to preserve these chemicals.  Whether this affected the results could have

18

been determined by the simple, standard procedure of having a control condition to establish that the test can detect the chemicals if they are there in the expected amounts.  Because this simple, obvious step was not taken, Plaintiff's mass spectrometry analysis tells nothing about the vanilla flavoring ingredients in WestSoy soymilk, and should be disregarded.

Plaintiff believes that she detected the flavor enhancer maltol in the mass spectroscopy, and seem to believe this the smoking gun showing that the Product really contains artificial vanilla flavor.  FAC ¶¶ 95-97, 113.  However, everything Plaintiff alleges about maltol is without basis and, as can be determined from sources Plaintiff herself cites or of which the Court may take judicial notice, is factually wrong, and indeed fabricated.  Plaintiff claims without support that maltol is "synthetic," i.e., not natural.[3]  In fact, maltol is a naturally occurring compound, is commonly derived in a way that makes it a natural flavor, and is sold as such by many suppliers.  Plaintiff claims that maltol is a vanilla-simulating flavor (FAC ¶ 113), yet even the reference cited by Plaintiff says that maltol "contributes no flavor of its own;"[4]  Plaintiff deceptively cites the same source for her contention that maltol "is used to enhance and substitute for real vanilla," but this is not stated in that or any other cited source.  The obvious inference from the sources cited in Plaintiff's own pleading is that maltol is an example of the "other natural flavors" indicated on the ingredient statement that is *not* a simulated vanilla flavor.

---

[3] In this connection, Plaintiff cites (as always) an FDA regulation, 21 C.F.R. §172.515(b) (Synthetic Flavoring Substances and Adjuvants) (FAC at 20 n.22).  This regulation lists various food additives, including maltol, that are recognized as safe when derived synthetically; it does *not* define these additives as always synthetic.  *See* 21 C.F.R. §101.22 ("Artificial flavor includes the substances listed in 172.515(b) and 182.60 of this chapter *except where these are derived from natural sources*.") (emphasis added).  Plaintiff's misreading of the regulation is an example of why her suit, premised solely on an amateur analysis of FDA regulations, is, and should be, preempted by 21 U.S.C. § 337(a).

[4] B.W. Nash & Sons Ltd., "Maltol," https://www.ulprospector.com/en/la/Food/Detail/12251/379765/Maltol, cited in FAC at 20 n.22.

### III.     Plaintiff Fails to Plead with the Requisite Particularity

A motion to dismiss should be granted where Plaintiff has not pled "enough facts to state a claim to relief which is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Although a court generally must accept factual allegations pled in the Complaint as true, it need not accept at least three categories of allegations:  (1) conclusions of law cast as factual allegations, including all of Plaintiff's contentions that the Products' labeling violates the FDCA or its regulations; and (2) unreasonable inferences; and (3) bare assertions amounting to nothing more than a formulaic recitation of a claim.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-681 (2009). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between 'possibility and plausibility of entitlement to relief.'"  *Id.* at 678, quoting *Twombly*, 550 U.S. at 557.  The factual allegations in the Complaint must do more than "create[] a suspicion of a legally cognizable right of action" and "raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Courts draw on judicial experience and common sense in making these determinations.  *Iqbal*, 556 U.S. at 679.

The Plaintiff is alleged to be a resident of New York.  She is alleged to have purchased an unspecified number of "the Product" at unspecified times within the undefined limitations periods relevant to her claims.  FAC ¶ 137.  The Complaint is bereft of any allegations as to which of the alleged label claims described in the Complaint this Plaintiff saw, what she understood them to mean, and what she purportedly did in reliance on these claims.

If this were merely an action by Plaintiff Barreto to recover the purchase price of the Products she bought, these Complaint allegations would be woefully inadequate to put Westbrae on notice as to Plaintiff's claims, and as to what defenses may be available.  At a minimum, Plaintiff would have to plead what products she bought, when she bought them (to establish

20

which version of Products she bought that may have changed over time, as well as whether the

suit is timely), what she paid, what packaging she saw, how she interpreted that packaging, what

she now believe about the Products, and why any alleged misrepresentation about the source of a

flavoring is material to her.  Plaintiff is not relieved of these requirements as to the individual

Plaintiff merely by styling her case as a class action.

### IV.   Plaintiff's Ancillary Causes of Action are Improperly Pled and/or Inappropriate

Plaintiff alleges several common-law causes of action that piggyback on the facts of its

main claim lodged under state consumer protection statutes.  These ancillary claims all fail

because Plaintiff's core theory of deception fails.  Even if Plaintiff's deception theory held water,

however, the ancillary claims would have to be dismissed because they are inadequately or

improperly pled and/or simply inappropriate to the fact pattern Plaintiff alleges.

### A.   Plaintiff Fails to State a Claim for Breach of Express Warranty or Implied Warranty of Merchantability

Plaintiff alleges that Westbrae "warranted to Plaintiff and class members that they

possessed substantive, functional, nutritional, qualitative, compositional, organoleptic, sensory,

physical and other attributes which they did not." FAC ¶ 161.  These are allegedly implied, not

express, representations.  Express warranty claims must be founded on express representations –

that is, a literal affirmation of fact or promise about the specific thing Plaintiff alleges to be

untrue.  *See In re Frito-Lay North America All Natural Litigation*, 12-MD-2413, 2013 U.S. Dist.

LEXIS 123824, at *84-85 (E.D.N.Y. Aug. 29, 2013).

Plaintiff's claim for breach of implied warranty of merchantability must also be dismissed

because Plaintiff does not allege that the Product is not of merchantable quality.  A breach of the

implied warranty of merchantability occurs only when a product is "unfit for the ordinary

purposes for which such goods are used" (U.C.C. § 2-314(c)) – in this case, unfit for human consumption.  Plaintiff does not and cannot plead this.  The only other plausible argument for a breach of implied warranty of merchantability is that the Product does not "conform to the promise or affirmations of fact made on the container or label" (U.C.C. § 2-314(f)), which is just a restatement of the definition of an express warranty, and requires a literal affirmation or promise.  These, again, were not pled; Plaintiff's case is based entirely on allegedly implied, not express, claims.

### B.   Plaintiff Fails to State a Claim for Negligent Misrepresentation

Plaintiff's claim for negligent misrepresentation is inappropriate under these circumstances, in which Plaintiff alleges misstatements by an advertiser to a mass audience of consumers engaging in arm's-length transactions.  In New York, there must be a special relationship of confidence and trust to establish potential liability for negligent misrepresentation.  *Kimmell v. Schaefer*, 89 N.Y.2d 257, 263 (1996) (requiring "special relationship" that places an exceptional duty of care on a speaker, such as where plaintiffs were investors in a limited partnership and defendant was attorney and director of an affiliated company who personally solicited plaintiffs as investors).  The duty to speak with care arises when "the relationship of the parties, arising out of a contract or otherwise, [is] such that in morals and good conscience the one has a right to rely upon the other for information."  *Id.* at 263, quoting *International Prods. Co. v. Erie R. R. Co.*, 244 N.Y. 331, 338 (1927).  To establish a claim for negligent representation the plaintiff must demonstrate "(1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information."  *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 180 (2011); *see also J.A.O. Acquisition*

*Corp. v. Stavitsky*, 8 N.Y.3d 144, 148 (2007); *Basis Yield Alpha Fund (Master) v. Goldman*

*Sachs Grp., Inc.*, 115 A.D.3d 128, 141 (App. Div. 2014) (cause of action dismissed for

complaint's lack of allegation of a relationship of trust and confidence between the parties).

Negligent misrepresentation claims generally are lodged against individuals with a direct, one-

on-one relationship with the plaintiff, especially professionals having special expertise, such as

attorneys, accountants and consultants.  *Kimmell*, 89 N.Y.2d at 263-64.  Applying this theory

where Plaintiff, and the putative class, are members of a mass audience of consumers, with no

direct relationship to Westbrae, is improper, and the claim should be dismissed.

### C.      Plaintiff Fails to State a Claim for Fraud

Plaintiff's claim for fraudulent misrepresentation fails because she has not pled fraud

with the required specificity. "To state a cause of action for fraudulent misrepresentation under

New York law, a plaintiff must allege 'a representation of material fact, the falsity of the

representation, knowledge by the party making the representation that it was false when made,

justifiable reliance by the plaintiff and resulting injury.'" *McBeth v. Porges*, 171 F. Supp. 3d

216, 225 (S.D.N.Y. 2016) (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 291 (2d Cir.

2006)).   Claims of fraud "must be pled with particularity" beyond that of a normal claim.

*Schwartzco Enterprises LLC v. TMH Mgmt., LLC*, 60 F. Supp. 3d 331, 344 (E.D.N.Y. 2014).

Further, under Fed. R. Civ. P. 9(b), Plaintiff must plead "details that 'give rise to a strong

inference that the defendant[] had an intent to defraud, knowledge of the falsity, or a reckless

disregard for the truth." *Id.*, quoting *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir.

2013).

New York courts have held that in false-advertising cases involving mass-marketed

products, allegations that the defendant was commercially motivated to increase its market share,

to satisfy consumer desires and expectations, and/or to increase its sales and profits do not give rise to the necessary strong inference that the defendant had an intent to defraud. *See Sarr*, 2020 U.S. Dist. LEXIS 25594 at 26-27, citing *Frito-Lay*, 2013 U.S. Dist. LEXIS 123824, at *25 and *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 268 (2d Cir. 1996). Plaintiff here does not even do this. Her only allegation of fraudulent intent just circularly reiterates her allegation of a false or misleading statement: "Defendant's fraudulent intent is evinced by its failure to accurately identify the Products on the front label when it knew this was not true". FAC ¶ 170. No basis for any finding of "strong inference of intent to defraud" is pled.

### D. Plaintiff Fails to State a Claim for Unjust Enrichment

Plaintiff's claim for unjust enrichment must fail because it is duplicative of her fraud and false advertising claims. An unjust enrichment claim is not available where it simply replicates another claim. *See Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 296-97 (S.D.N.Y. 2015) (dismissing unjust enrichment claim that was duplicative of GBL claims); *Bowring v. Sapporo U.S.A., Inc.*, 234 F. Supp. 3d 386, 392 (E.D.N.Y. 2017) (same). This rule has been repeatedly applied by New York's federal courts to dismiss add-on unjust enrichment claims in cases similar to the current one. S*ee, e.g.*, *Price v. L'Oreal USA, Inc.*, No. 17-civ-0614, 2017 U.S. Dist. LEXIS 165931, at *13 (S.D.N.Y. Oct. 5, 2017) ("All of the claims in the Complaint are based on the same alleged misrepresentation by Defendants that the Products contain keratin. Accordingly, Plaintiff's New York unjust enrichment claim is dismissed as duplicative."); *Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 568 (S.D.N.Y. 2016) (dismissing unjust enrichment claim on the grounds that it was duplicative).

24

### V.        Plaintiff Lacks Standing to Seek Injunctive Relief

Plaintiff in this case has no standing to seek injunctive relief.  Numerous district courts in the Second Circuit have dismissed claims for injunctive relief in false advertising cases where, as here, the plaintiff is "now aware of the alleged misrepresentations that they challenge" and therefore "there is no danger that they will again be deceived by them." *Davis v. Hain Celestial Grp., Inc.*, 297 F. Supp. 3d 327, 339 (E.D.N.Y. 2018) ("To the extent that plaintiff was deceived by defendants' products, he is now aware of the truth and will not be harmed again in the same way.  He therefore lacks standing to seek an injunction."); *Elkind v. Revlon Consumer Prods. Corp.*, No. 14-2484, 2015 U.S. Dist. LEXIS 63464, at *8 (E.D.N.Y. May 14, 2015); *Hidalgo v. Johnson & Johnson Consumer Cos., Inc.*, 148 F. Supp. 3d 285, 295-96 (S.D.N.Y. 2015) ("A plaintiff lacks standing to bring an action for injunctive relief when, as here, she does not allege that she will suffer any future injury as a result of defendant's continued conduct"); *Tomasino v. Estee Lauder Cos., Inc.*, 44 F. Supp. 3d 251, 256 (E.D.N.Y. 2014) (denying standing because plaintiff "has made clear that she does not believe the ANR products have the effects advertised by Estee Lauder").

### CONCLUSION

For the foregoing reasons, Westbrae respectfully requests that this Court grant its motion to dismiss Plaintiff's First Amended Complaint.

Dated: May 1, 2020                         Respectfully submitted,

                                           */s/ August T. Horvath*
                                           August T. Horvath (AH 8776)
                                           *ahorvath@foleyhoag.com*
                                           FOLEY HOAG LLP
                                           1301 Sixth Avenue, 25th Floor
                                           New York, New York 10019
                                           Tel:  (646) 927-5500
                                           Fax (646) 927-5599

                                           *Attorneys for Defendant Westbrae Natural
                                           Inc.*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 1st day of May 2020, a true and correct copy of the foregoing document has been served on counsel of record who are deemed to have consented to electronic service via ECF.


*/s/ August Horvath*
August T. Horvath