United States District Court
Southern District of New York

1:19-cv-09677-PKC

Natasha Barreto, individually and on
behalf of all others similarly situated,

Plaintiff,

- against –

Westbrae Natural, Inc.,

Defendant

Plaintiff's Memorandum of Law in Opposition
to Defendant's Motion to Dismiss the First Amended Complaint

SHEEHAN & ASSOCIATES
Spencer Sheehan
505 Northern Blvd., Suite 311
Great Neck, NY 11021
Telephone: (516) 303-0552
Facsimile: (516) 234-7800
spencer@spencersheehan.com

REESE LLP
Michael R. Reese
100 West 93rd Street, 16th Floor
New York, NY 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272
mreese@reesellp.com
Attorneys for Plaintiffs

**Table of Contents**

Table of Authorities ........................................................................................................ iii

Introduction ..................................................................................................................... 1

Argument ......................................................................................................................... 1

I.      Legal Standard .................................................................................................... 1

        A.      Factual Allegations Should Be Accepted as True ................................... 1

        B.      Plaintiff has Shown that it is Plausible a Reasonable Consumer
                Would be Misled ..................................................................................... 2

        C.      Defendant's Labeling Should be Viewed in Context .............................. 2

II.     Federal Law Does Not Preempt Plaintiff's Claims ............................................ 5

        A.      Preemption is Applicable Where Federal and State Requirements
                are Inconsistent ...................................................................................... 5

        B.      Defendant Fails to Overcome Presumption Against Federal
                Preemption of State Law ........................................................................ 6

        C.      New York Law is Identical to Federal Law, Explicitly Does Not
                Preempt Plaintiff's Claims ..................................................................... 7

III.    Contrary to Defendant's Position, New York State has Food and Flavoring
        Standards Identical to those Established Through the FDCA ............................ 8

        A.      New York has Incorporated All Regulations Cited in the FAC ............. 8

        B.      Defendant Fails to Reference the New York Regulations Which
                Contradict its Preemption Defense ........................................................ 9

IV.     Defendant Cannot Dictate What a "Reasonable Consumer" Should Expect
        from Vanilla Soymilk ........................................................................................ 11

V.      Plaintiff States a Claim Under GBL §§ 349 and 350 ........................................ 15

        A.      Defendant's Statements Were Materially Misleading .......................... 15

        B.      Defendant's Critique of the GC-MS Analysis Misunderstands its
                Purpose at Pleading Stage .................................................................... 17

        C.      Defendant Fails to Rebut the Core Allegations About Vanillin ........... 19

D.     Plaintiff Sufficiently Alleges That She Has Suffered an Injury as a
       Result of Defendant's Deceptive Conduct ........................................... 21

E.     Numerous Questions of Fact Exist Which Make Disposition of Case
       at Motion to Dismiss Stage Inappropriate ........................................... 21

VI.    Plaintiff Properly Pleads Common Law Claims ................................................ 23

A.     Plaintiff Properly Pleaded a Claim of Negligent Misrepresentation ................... 23

B.     Plaintiff Properly Pleaded a Claim of Fraud ........................................... 24

C.     Plaintiff Adequately Alleged Breach of Express Warranty Claims..................... 25

D.     Plaintiff's Claim of Unjust Enrichment Is Not Duplicative................................ 27

VII.   Plaintiff Has Standing to Seek Injunctive Relief .............................................. 28

Conclusion ........................................................................................................... 29

# Table of Authorities

**Cases**

*62 Cases of Jam v. United States*,
   340 U.S. 593, 71 S. Ct. 515, 95 L. Ed. 566 (1951) ................................................................. 13

*Ackerman v. Coca-Cola Co.*,
   No. 09-cv-00395, 2013 WL 7044866, (E.D.N.Y. July 18, 2013) ............................ 7, 8, 22, 29

*Aetna Cas. And Sur. V. Aniero Concrete Co., Inc.*,
   404 F.3d 566 (2d Cir. 2005) ...................................................................................................... 24

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................................... 1, 2

*Astiana v. Ben & Jerry's Homemade, Inc.*,
   No. 10-cv-4387, 2011 WL 2111796 (N.D. Cal. May 26, 2011) .................................................. 6

*Ault v. J.M. Smucker Co.*,
   No. 13-cv-3409, 2014 WL 1998235 (S.D.N.Y. 2014) ...................................................... 25, 26

*Avola v. La.-Pac. Corp.*,
   No. 11-cv-4053, 2013 WL 4647535 (E.D.N.Y. Aug. 28, 2013) ............................................... 26

*Bates v. Dow Agrosciences LLC*,
   544 U.S. 431 (2005) .................................................................................................................... 7

*Bd. of Educ. of Pawling Cent. Sch. Dist. v. Schutz*,
   290 F.3d 476 (2d Cir. 2002) ........................................................................................................ 2

*Belfiore v. Procter & Gamble Co.*,
   No. 14-cv-4090, 311 F.R.D. 29, 2015 WL 5781541 (E.D.N.Y. Oct. 5, 2015) .................. 4, 29

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................................... 1, 2

*Boule v. Hutton*,
   328 F.3d 84 (2d Cir. 2003) .......................................................................................................... 3

*Broder v. MBNA Corp.*,
   281 A.D.2d 369, 722 N.Y.S.2d 524 (1st Dep't 2001) ................................................................. 4

*Buonasera v. Honest Co., Inc.*,
   208 F. Supp 3d 555 (S.D.N.Y. 2016) ........................................................................................ 25

*Burton v. Iyogi, Inc.*,
   No. 13-cv-6926, 2015 WL 4385665 (S.D.N.Y. Mar. 16, 2015) ............................................... 27

*Carias v. Monsanto Co.*,
  No. 15-cv-03677, 2016 WL 6803780 (E.D.N.Y. Sept. 30, 2016) ........................................ 21

*Chambers v. Time Warner, Inc.*,
  282 F.3d 147 (2d Cir. 2002) ................................................................................................ 23

*Cohn v. Lionel Corp.*,
  289 N.Y.S.2d 404 (1968) ...................................................................................................... 27

*Cummings v. FCA US LLC*,
  401 F. Supp. 3d 288 (N.D.N.Y. 2019) ................................................................................. 27

*Davidson v. Kimberly-Clark Corp.*,
  889 F.3d 956 (9th Cir. 2018) ................................................................................................ 29

*Eternity Glob. Master Fund. Ltd. v. Morgan Guar. Trust Co. of N.Y.*,
  375 F.3d 168 (2d Cir. 2004) ................................................................................................. 24

*Federal Security Administrator v. Quaker Oats Co.*,
  318 U.S. 218, 63 S. Ct. 589, 87 L. Ed. 724 (1943) ............................................................. 13

*Fink v. Time Warner Cable*,
  714 F.3d 739 (2d Cir. 2013) ................................................................................................... 4

*Freeman v. Time, Inc.*,
  68 F.3d 285 (9th Cir.1995) ..................................................................................................... 4

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
  528 U.S. 167 (2000) .............................................................................................................. 28

*Gant v. Wallingford Bd. of Educ.*,
  69 F.3d 669 (2d Cir. 1995) ..................................................................................................... 1

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
  8 F. Supp 3d 467 (S.D.N.Y. 2014) ...................................................................................... 26

*Goldman v. Belden*,
  754 F.2d 1059 (2d Cir. 1985) ............................................................................................... 23

*Goshen v. Mutual Life Ins. Co. of N.Y.*,
  774 N.E.2d 1190, 98 N.Y.2d 314 (2002) ............................................................................... 3

*Greene v. Gerber Products Co.*,
  262 F. Supp 3d 38 (E.D.N.Y. 2017) ..................................................................................... 24

*Hanley v. Chicago Title Ins. Co.*,
  No. 12-cv-4418, 2013 WL 3192174 (S.D.N.Y. June 24, 2013) ............................................. 1

iv

*Henry v. Daytop Vill., Inc.,*
    42 F.3d 89 (2d Cir.1994).................................................................................. 27

*Holk v. Snapple Beverage Corp.,*
    575 F.3d 329 (3d Cir. 2009)............................................................................. 7

*Huang v. iTV Media, Inc.,*
    13 F. Supp. 3d 246 (E.D.N.Y. 2014) .............................................................. 27

*In re Frito-Lay N. Am., Inc. All Natural Litig.,*
    12-md-2413, 2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013)............................. 20

*J.A.O.Acquisition Corp. v. Stavitsky,*
    8 NY3d 144 (2007) ......................................................................................... 23

*Jackson-Mau v. Walgreen Co.,*
    18-cv-04868, 2019 WL 5653757 (E.D.N.Y. Oct. 31, 2019) ............................. 28

*Jovel v. i-Health, Inc.,*
    No. 12-cv-5614 JG, 2013 WL 5437065 (E.D.N.Y. Sept. 27, 2013)......................... 5, 6, 7, 14

*Kacocha v. Nestle Purina Petcare Co.,*
    No. 15-cv-5489 (S.D.N.Y. Aug. 11, 2016)...................................................... 21

*Karlin v. IVF Am., Inc., et. al.,*
    93 N.Y.2d 282 (1999) ...................................................................................... 3

*Koenig v. Boulder Brands, Inc.,*
    995 F. Supp. 2d 274 (S.D.N.Y. 2014)................................................... 9, 20, 22

*Larsen v. Trader Joe's Co.,*
    917 F. Supp. 2d 1019 (N.D. Cal. 2013) .......................................................... 14

*Libby, McNeill & Libby v. United States,*
    148 F.2d 71 (2d Cir. 1945)............................................................................... 13

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC,*
    797 F.3d 160 (2d Cir. 2015)............................................................................. 25

*Mandarin v. Wildenstein,*
    16 N.Y.3d 181 (2011) ...................................................................................... 23

*Mantikas v. Kellogg Company,*
    910 F.3d 633 (S.D.N.Y. 2018).......................................................................... 4

*Mennen Co. v. Gillette Co.,*
    565 F. Supp. 648 (S.D.N.Y. 1983) ................................................................... 3

*Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*,
  710 F.3d 71 (2d Cir. 2013) ................................................................. 21

*New York State Rest. Ass'n v. New York City Bd. of Health*,
  556 F.3d 114 (2d Cir. 2009) .......................................................... 5, 6, 7

*NML Capital, Ltd. v. Republic of Argentina*,
  No. 05-cv-2434, 2009 WL 1528535
  (S.D.N.Y. May 29, 2009) ................................................................... 17

*Orlander v. Staples, Inc.*,
  802 F.3d 289 (2d Cir. 2015) ................................................................ 3

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*,
  85 N.Y.2d 20 (1995) ........................................................................... 3

*Patane v. Nestle Waters North America, Inc.*,
  314 F. Supp 3d 375 (D. Conn. 2018) .................................................. 8

*Paulino v. Conopco, Inc.*,
  No. 14-cv-05145, 2015 WL 4895234 (E.D.N.Y. Aug. 17, 2015) ......... 22

*Pelman v. McDonald's Corp.*,
  396 F.3d 508 (2d Cir. 2005) ................................................................ 4

*Plumley v. Com. of Mass.*,
  155 U.S. 461 (1894) ........................................................................... 7

*Quiroz v. Beaverton Foods, Inc.*,
  No. 17-cv-7348 (E.D.N.Y. Mar. 31, 2019) ........................................ 11

*Ross v. Bolton*,
  904 F.2d 819 (2d Cir.1990) ............................................................... 25

*Sciortino v. Pepsico, Inc.*,
  108 F. Supp. 3d 780 (N.D. Cal. 2015) ................................................ 6

*Silva v. Smucker Nat. Foods, Inc.*,
  No. 14-cv-06154, 2015 WL 5360022 (E.D.N.Y. Sept. 14, 2015) ... 21, 22

*Sims v. First Consumers Nat. Bank*,
  303 A.D. 2d 288, 758 N.Y.S. 2d 284 (1st Dept. 2003) ......................... 4

*Sitt v. Nature's Bounty, Inc.*,
  No. 15-cv-4199, 2016 WL 5372794 (E.D.N.Y. Sept. 26, 2016) .......... 21

*Stoltz v. Fage Dairy Processing Indus., S.A.*,
  No. 14-cv-03826, 2015 WL 5579872 (E.D.N.Y. Sept. 22, 2015) ........ 21

*Verzani v. Costco Wholesale Corp.*,
   641 F. Supp. 2d 291 (S.D.N.Y. 2010) ................................................................. 15

*Weisman v. LeLandais*,
   532 F.2d 308 (2d Cir. 1976) .................................................................................. 1

*Williams v. Calderoni*,
   2012 U.S. Dist. LEXIS 28723 (S.D.N.Y. Mar. 1, 2012) ....................................... 2

*Williams v. Schwartz*,
   529 F. App'x 89 (2d Cir. 2013) ............................................................................. 2

*Winick Realty Grp. LLC v. Austin & Assocs.*,
   857 N.Y.S.2d 114 (1st Dep't 2008) ..................................................................... 27

*Woods v. Maytag Co.*,
   807 F. Supp.2d 112 (E.D.N.Y. 2011) .................................................................... 2

*Wyeth v. Levine*,
   555 U.S. 555 (2009) .............................................................................................. 6

*Zupnik v. Tropicana Prods., Inc.*,
   No. 09-cv-6130 2010 WL 6090604 (C.D. Cal. Feb. 1, 2010) ........................ 14, 15

## Regulations

1 NYCRR § 250.1(a) .................................................................................................. 10

1 NYCRR § 250.1(a)(17) .............................................................................................. 9

1 NYCRR § 259.1(a) .................................................................................................... 9

1 NYCRR § 259.1(a)(3) .............................................................................................. 10

1 NYCRR § 259.1(a)(4) .............................................................................................. 10

21 C.F.R. § 101.22(i)(1) ........................................................................................ 10, 16

21 C.F.R. § 102.5(a) .................................................................................................. 10

21 C.F.R. § 169.175 ................................................................................................... 19

21 C.F.R. §169.3(b) .................................................................................................. 12

21 C.F.R. §169.3(c) ................................................................................................... 12

## Statutes

21 U.S.C. § 301 .......................................................................................................... 5

21 U.S.C. § 337(a) ......................................................................................................... 8

21 U.S.C. § 341 ............................................................................................................... 5

21 U.S.C. § 343 ............................................................................................................... 5

21 U.S.C. § 343(a)(1) ..................................................................................................... 5

21 U.S.C. § 343(g) .......................................................................................................... 5

21 U.S.C. § 343-1 ........................................................................................................... 5

21 U.S.C. § 343-1(a)(1) ............................................................................................... 5, 8

21 U.S.C. §343(g) ......................................................................................................... 12

N.Y. Gen. Bus. Law § 349 ................................................................................. 2, 4, 5, 14

N.Y. Gen. Bus. Law § 350 ................................................................................. 2, 4, 5, 14

**Federal Register**

56 Fed. Reg. 60,528 ........................................................................................................ 6

56 Fed. Reg. 60,530 ........................................................................................................ 6

**Other Authorities**

FDA Letter, Belay to Weisz, October 10, 2008 ............................................................ 19

FDA Letter, Ferré-Hockensmith to Brownell, April 19, 2005 ...................................... 19

FDA Letter, Ferré-Hockensmith to Brownell, August 5, 2008 ..................................... 20

FDA Letter, Quinn to Molina, January 17, 1980 ......................................................... 19

## Introduction

Plaintiff submits this memorandum of law in opposition to Defendant's Motion to Dismiss the First Amended Complaint ("FAC") brought pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Def. Notice of Motion and Memorandum of Law in Support ("Mem."). For the reasons below, the motion should be denied it in its entirety.

## Argument

### I.   Legal Standard

In evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the "issue is not whether a plaintiff is likely to prevail ultimately, 'but whether the claimant is entitled to offer evidence to support the claims. Indeed, it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test.'" *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995) (quoting *Weisman v. LeLandais*, 532 F.2d 308, 311 (2d Cir. 1976)).

#### A.   Factual Allegations Should Be Accepted as True

A court "must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Hanley v. Chicago Title Ins. Co.*, No. 12-cv-4418, 2013 WL 3192174, at *2 (S.D.N.Y. June 24, 2013) (citing *Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010).

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("*Iqbal*"). "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citations omitted). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

For purposes of a Rule 12(b)(6) motion, facts alleged by the nonmoving party are presumed to be true and construed in the light most favorable to plaintiff. *Bd. of Educ. of Pawling Cent. Sch. Dist. v. Schutz*, 290 F.3d 476, 479 (2d Cir. 2002). Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and… determine whether they plausibly give rise to an entitlement of relief." *Woods v. Maytag Co.*, 807 F. Supp.2d 112, 118–19 (E.D.N.Y. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

B.   Plaintiff has Shown that it is Plausible a Reasonable Consumer Would be Misled

Plaintiff needs only to assert factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff's claim to relief must be "plausible on its face," *Id.* at 570, and a complaint fails if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557.

However, "[t]he plausibility standard [on a motion to dismiss] is not akin to a probability requirement." *Iqbal*, 556 U.S. at 559 129 S. Ct. at 1937. A plaintiff need only "nudge" their allegations "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 548; *Williams v. Calderoni*, 2012 U.S. Dist. LEXIS 28723, at *20 (S.D.N.Y. Mar. 1, 2012) (in evaluating a complaint under a Rule 12(b)(6) standard, the Court need not accept "implausible allegations or legal conclusions expressed as facts"), *aff'd*, *Williams v. Schwartz*, 529 F. App'x 89 (2d Cir. 2013)

C.   Defendant's Labeling Should be Viewed in Context

To state a claim pursuant to GBL §§ 349 and 350, a plaintiff must allege that: (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff was injured as a result. *See, e.g.*, *Oswego Laborers' Local 214 Pension*

*Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 25 (1995); *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (internal citation omitted).

Thus, to prevail on their claims, a Plaintiff need only provide proof of a deceptive act or practice and not "proof that a statement is false." *Boule v. Hutton*, 328 F.3d 84, 94 (2d Cir. 2003); *see also People v. General Elec. Co.*, 756 N.Y.S.2d 520 (1st Dep't 2003) (explaining that "literal truth is not an availing defense" if the representation has the capacity "to mislead even reasonable consumers acting reasonably under the circumstances").

Additionally, there is no requirement that Plaintiff prove that Defendant's practices or acts were intentional, fraudulent or even reckless. Nor does Plaintiff have to prove reliance upon Defendant's deceptive practices. *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 623 N.Y.S.2d at 532-33; *Mennen Co. v. Gillette Co.*, 565 F. Supp. 648, 655 (S.D.N.Y. 1983).

"To successfully assert a claim under either section of the GBL, 'a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice.'" *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015).

The purpose of these laws is "to secure an 'honest market place' where 'trust,' and not deception, prevails." *Goshen v. Mutual Life Ins. Co. of N.Y.*, 774 N.E.2d 1190, 1195, 98 N.Y.2d 314, 324 (2002) (citation omitted).  These statutes on their face apply to virtually all economic activity, and their application has been correspondingly broad." *Karlin v. IVF Am., Inc., et. al.,* 93 N.Y.2d 282, 290 (1999). "The reach of these statutes provide[s] needed authority to cope with the numerous, ever-changing types of false and deceptive business practices which plague consumers in our State." *Id.* at 291 (alteration in original) (quotation marks and citation omitted). Moreover,

a plaintiff is not required to meet the enhanced pleading requirements of Rule 9(b) for GBL §§ 349 and 350 claims but rather need only meet the Rule 8(a) standard. *Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005).

Whether a particular act or practice is deceptive is intensely factual, and, therefore, motions to dismiss are disfavored. *See, e.g.*, *Sims v. First Consumers Nat. Bank*, 303 A.D. 2d 288, 289, 758 N.Y.S. 2d 284, 285-286 (1st Dept. 2003) ("Whether defendant's conduct was deceptive or misleading is a question of fact"). Though Defendant asserts the issues before the Court are unambiguous, very few cases are so clear-cut, and a closer look often reveals nuance and context, requiring a fact-intensive analysis. *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013) ("[I]n determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial") citing *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir.1995) (magazine sweepstakes mailer was not deceptive where "promotions expressly and repeatedly state the conditions which must be met in order to win" and such disclaimer "appears immediately next to the representations it qualifies"); *Belfiore v. Procter & Gamble Co.*, No. 14-cv-4090, 311 F.R.D. 29, 2015 WL 5781541, at *35 (E.D.N.Y. Oct. 5, 2015) (to establish a prima facie case under GBL § 349, "The entire mosaic is viewed rather than each tile separately.").

Courts within this state have consistently held that "issues of deceptiveness and good faith are not resolved as a matter of law" through a fine print disclaimer. *Broder v. MBNA Corp.*, 281 A.D.2d 369, 371, 722 N.Y.S.2d 524 (1st Dep't 2001) (credit card agreement where the disclaimer was present "in the small print footnote to the solicitation offer" is insufficient to defeat a claim of deception). Moreover, technical accuracy is not a defense to a claim of misleading labelling. *Mantikas v. Kellogg Company*, 910 F.3d 633 (S.D.N.Y. 2018).

4

Plaintiff's detailed allegations regarding Defendant's deceptive practices adequately pleads claims under New York General Business Law §§349 and 350; negligent representation; breach of express warranty; fraud; and unjust enrichment. Defendant's motion to dismiss the complaint should be denied in its entirety.

Though Defendant concedes that Plaintiff alleges consumer-oriented conduct, it argues that Plaintiff fails to allege injury or a materially misleading conduct. Defendant simply ignores the allegations supporting Plaintiff's GBL claims.

## II.    Federal Law Does Not Preempt Plaintiff's Claims

### A.    Preemption is Applicable Where Federal and State Requirements are Inconsistent

Congress originally enacted the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.* (the "FDCA"), in 1938. The FDCA generally prohibits misbranding of food. 21 U.S.C. § 343; *see New York State Rest. Ass'n v. New York City Bd. of Health*, 556 F.3d 114, 118 (2d Cir. 2009). Under the statute, a food is misbranded if "its labeling is false or misleading in any particular," 21 U.S.C. § 343(a)(1).

In 1990, Congress enacted the Nutrition Labeling and Education Act of 1990, Pub. L. No. 101–535, 104 Stat. 2353 (the "NLEA"), which added an express preemption provision to the FDCA. 21 U.S.C. § 343-1; *Jovel v. i-Health, Inc.*, No. 12-cv-5614 JG, 2013 WL 5437065, at *3 (E.D.N.Y. Sept. 27, 2013). Under the provision, no state "may directly or indirectly establish . . . any requirement for a food which is the subject of a standard of identity established under [21 U.S.C. § 341] that is not identical to such standard of identity or that is not identical to the requirement of [21 U.S.C. § 343(g)]." 21 U.S.C. § 343-1(a)(1).

"The purpose of the NLEA . . . is not to preclude all state regulation of nutritional labeling, but to 'prevent State and local governments from adopting *inconsistent* requirements with respect to the labeling of nutrients.'" *Astiana v. Ben & Jerry's Homemade, Inc.*, 10-cv-4387, 2011 WL

2111796, at *8 (N.D. Cal. May 26, 2011) ("*Ben & Jerry's*") (emphasis added) (quoting H.R. Rep. No. 101–538, at 10 (1990)). Thus, if Plaintiff seeks to bring an action under state consumer protection law alleging Defendant's Product labeling is inconsistent with federal regulations and their identical state-level counterparts, the NLEA does not expressly preempt the state law claim. *Jovel*, 2013 WL 5437065, at *3 (NLEA preemption clause "has been repeatedly interpreted not to preempt requirements imposed by state law that effectively parallel or mirror the relevant sections of the NLEA").

Congress expressly limited the NLEA's preemptive reach, stating that the statute "shall not be construed to preempt any provision of State law, unless such provision is expressly preempted under [21 U.S.C. § 343-1]." NLEA § 6(c), 104 Stat. at 2364; *see New York State Rest. Ass'n*, 556 F.3d at 123. The note on construction "provides an 'express definition of the pre-emptive reach' of the NLEA." *Sciortino v. Pepsico, Inc.*, 108 F. Supp. 3d 780, 797 n.5 (N.D. Cal. 2015). "Congress's enacted note on construction has the 'force of law' and 'works together' with the statute." *Id.* As the FDA has explained, the note "clearly manifests Congress' intention" that the NLEA is not to preempt state law beyond its express terms. State Petitions Requesting Exemption From Federal Preemption, 56 Fed. Reg. 60,528, 60,530 (Nov. 27, 1991).

B.   Defendant Fails to Overcome Presumption Against Federal Preemption of State Law

"[T]he purpose of Congress is the ultimate touchstone in every pre-emption case." *Wyeth v. Levine*, 555 U.S. 555, 565 (2009). "Congress does not cavalierly pre-empt state-law causes of action." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996). In all preemption cases, and particularly in those in which Congress has "legislated . . . in a field which the States have traditionally occupied," the courts "start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Wyeth*, 555 U.S. at 565.

Thus, in fields the states have traditionally occupied, "such as health and safety regulation," including regulation of food labeling, "there is a strong presumption against federal preemption." *Jovel*, 2013 WL 5437065, at *5; *see also Plumley v. Com. of Mass.*, 155 U.S. 461, 472 (1894) ("If there be any subject over which it would seem the states ought to have plenary control . . . it is the protection of the people against fraud and deception in the sale of food products."); *Holk v. Snapple Beverage Corp.*, 575 F.3d 329, 334 (3d Cir. 2009) ("Health and safety issues have traditionally fallen within the province of state regulation. This is true of the regulation of food and beverage labeling."). And "[a]s a result, where the text of a preemption clause is ambiguous or open to more than one plausible reading, courts 'have a duty to accept the reading that disfavors pre-emption.'" *New York State Rest. Ass'n*, 556 F.3d at 123 (quoting *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 449 (2005)).

C.   New York Law is Identical to Federal Law, Explicitly Does Not Preempt Plaintiff's Claims

The "express preemption" provision at 21 U.S.C. § 343-1(a) only applies to state laws which impose requirements different from FDA regulations. "New York . . . broadly prohibits the misbranding of food in language largely identical to that found in the FDCA." *Ackerman v. Coca-Cola Co.*, No. 09-cv-00395, 2013 WL 7044866, at *6 (E.D.N.Y. July 18, 2013).

Courts routinely recognize that state law causes of action are not preempted by the NLEA if they "seek to impose requirements that are identical to those imposed by the FDCA." *Id*. at *6. This is so because "a state statute mirroring its federal counterpart does not impose any additional requirement merely by providing a damages remedy for conduct that would otherwise violate federal law, even if the federal statute provides no private right of action." *Id* (citing *Bates*).

**III.    Contrary to Defendant's Position, New York State has Food and Flavoring Standards Identical to those Established Through the FDCA**

Defendant relies heavily on "an especially instructive case" which "challenged a food's statement of identity –'spring water' in that case – and contended that it was deceptive because, allegedly, it did not conform to the FDCA's requirements, lodging its claims under the laws of several states, including New York." Def. Mem. At 10-11 citing *Patane v. Nestle Waters North America, Inc.*, 314 F. Supp 3d 375 (D. Conn. 2018) ("*Patane I*").

Defendant adopts the argument of that court and asserts that the present action is subject to implied preemption, 21 U.S.C. § 337(a) and express preemption. Mem. at 11 ("another [premption provision in the FDCA] preempts any state from imposing standards of identity that are 'not identical' to those of the FDCA" citing 21 U.S.C. § 343-1(a)(1)).

Defendant then acknowledges that the "one exception to FDCA preemption is that if a state has enacted food regulations imposing standards identical to those of the FDCA, then states may enforce those laws, and they may provide private rights of action to do likewise." Mem. at 11.

A.    New York has Incorporated All Regulations Cited in the FAC

According to Defendant, California has such a "broad mini-FDCA," but "New York has no comprehensive state food regulatory law like California's Sherman Law, and it has no special regulation of vanilla or soy milk like its regulation of spring water." *Id*.

This statement is incorrect and fails to bring to the Court's attention the very thing defendant claims does not exist: New York State's adoption and incorporation of the FDCA. The reason why many people believe New York lacks a "broad mini-FDCA" is because it is buried within Title 1 ("Agriculture and Markets Law") of the Official Compilation of Codes, Rules and Regulations of the State of New York ("NYCRR"). *See Ackerman* 2013 WL 7044866 at *9 (Like California's Sherman Act, "New York's Agriculture and Marketing law similarly provides in

relevant part that food shall be deemed misbranded 'if its labeling is false or misleading in any particular' and incorporates the FDCA's labeling provisions found in 21 C.F.R. part 101.) (quoting Agriculture and Market Law § 201(1); N.Y. Comp. Codes R. Regs. tit. 1, § 259.1); *See also Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 280-81 (S.D.N.Y. 2014) ("New York law also provides remedies, including private rights of action, for misbranding food under consumer protection laws, such as GBL § 349, which broadly prohibits use of 'deceptive acts or practices' in business dealings in New York.").

    B.    <u>Defendant Fails to Reference the New York Regulations Which Contradict its Preemption Defense</u>

Defendant's failure to identify New York's parallel and identical food labeling laws was likely stymied by the relative disorganization of these regulations, as they are spread across ten chapters, each with various Subchapters, Parts and Sections.

For instance, locating the sections of 1 NYCRR which specifically incorporate the FDCA labeling requirements entails drilling down to Chapter VI., Food Control, Subchapter C., Food and Food Products, Part 259, § 259.1 ("Packaging and labeling of food.") ("the commissioner hereby adopts the current regulations [Parts 100-102] as they appear in title 21 of the *Code of Federal Regulations*"). *See* 1 NYCRR § 259.1(a).

New York has also incorporated the standards for vanilla products. *See* 1 NYCRR § 250.1(a)(17) ("the commissioner hereby adopts the following as the standards of identity and/or standards of quality, and tolerances for food and food products as published in title 21 of the Code of Federal Regulations . . . 21 C.F.R. part 169 containing the Federal definitions and standards for *Food Dressings and Flavorings* at pages 600-606"). 1 NYCRR § 250.1(a)(17), Section 250.1, Foods, Part 250, Definitions and Standards, Subchapter C, Food and Food Products, Chapter VI, Food Control, Title I.

The non-dairy standardized foods – including vanilla – are placed within Part 250, "Definitions and Standards." *See* 1 NYCRR § 250.1(a)(17) (incorporating federal standards of identity for foods including vanilla products at "21 CFR part 169, containing the Federal definitions and standards for *Food Dressings and Flavorings* at pages 600-606.").

All food products are required to have "common or usual name" which "accurately identif[ies] or describe[s], in as simple and direct terms as possible, the basic nature of the food or its characterizing properties or ingredients." *See* 21 C.F.R. § 102.5(a); adopted in its entirety by New York at 1 NYCRR § 259.1(a)(4) ("the commissioner hereby adopts the current regulations as they appear in title 21 of the Code of Federal Regulations (revised as of April 1, 2013; U.S. Government Printing Office, Washington, D.C. 20402), in the area of food packaging and labeling a follows . . . (4) Part 102 of title 21 of the Code of Federal Regulations, containing the Federal definitions and standards for Common or Usual Name for Nonstandardized Food at pages 173-180."). 1 NYCRR § 259.1(a)(4), Section 259.1, Packaging and labeling of food, Part 259, Packaging and labeling of food, Subchapter C, Food and Food Products, Chapter VI, Food Control, Title 1.

Where a product makes a representation as to its primary flavor, the truthful and non-misleading designation of that flavor is required to become part of the common or usual name. *See* 21 C.F.R. § 101.22(i)(1) ("If the label, labeling, or advertising of a food makes any direct or indirect representations with respect to the primary recognizable flavor(s), by word, vignette, e.g., depiction of a fruit, or other means, or if for any other reason the manufacturer or distributor of a food wishes to designate the type of flavor in the food other than through the statement of ingredients, such flavor shall be considered a characterizing flavor . . .); adopted in its entirety by New York at 1 NYCRR § 259.1(a)(3) ("the commissioner hereby adopts the current regulations

as they appear in title 21 of the Code of Federal Regulations (revised as of April 1, 2013; U.S. Government Printing Office, Washington, D.C. 20402), in the area of food packaging and labeling as follow . . . (3) Part 101 of title 21 of the Code of Federal Regulations, containing the Federal definitions and standards for Food Labeling (including Appendices) at pages 10-172.").

The result of this regulatory scheme is that New York State labeling requirements for this Product are identical to their federal counterparts, and therefore this case is not preempted by federal regulations.

## IV.   Defendant Cannot Dictate What a "Reasonable Consumer" Should Expect from Vanilla Soymilk

According to Defendant, the FAC's "technical" allegations are irrelevant to a "reasonable consumer." Mem at 1 ("A reasonable consumer would not perceive the misleading messages alleged by Plaintiff to be communicated about the products, and the remedies suggested by Plaintiff would make no difference in a reasonable consumer's interpretation of the packaging.").

*Quiroz v. Beaverton Foods, Inc.*, No. 17-cv-7348 (E.D.N.Y. Mar. 31, 2019) is instructive on this point. In that case, the plaintiff contended that the defendant's product, mustard marketed as containing "no preservatives," contained citric acid. In support of her contention, the plaintiff referred to the statutory definition of a preservative. There, the court denied the defendant's motion to dismiss finding that the plaintiff's claim was "not premised on a violation of federal labeling requirements" but instead "it is based on the contention that the label 'no preservatives' is misleading because the product does in fact contain preservatives." *Id.*

The same logic applies to this case. Plaintiff cites often to statutory definitions and requirements because they are the best touchstone available to define what is deceptive behavior. At the heart of the allegations, however, is an inherently deceptive act that would be deceptive "regardless of the existence of the FDCA and its implementing regulations." *Id.*

11

To prevent "the widespread and exceedingly serious adulteration of vanilla extracts that are now labeled 'pure'…[which] deprive[d] the consumer of value," standards of identity for vanilla products were established. [1] *See* 21 C.F.R. §169.3(c) referencing 21 C.F.R. §169.3(b) (a "unit of vanilla constituent means the total sapid and odorous principles extractable from one unit weight of vanilla beans," or 13.35 ounces); *see also* 21 U.S.C. §343(g) (requiring that where a food "purports to be or is represented as a food for which a definition and standard of identity has been prescribed by regulations," it must "conform[s] to such definition and standard" and must be labeled with "the name of the food specified in the definition and standard."); 21 C.F.R. § 169.175 – 21 C.F.R. § 169.182 (vanilla products).

Hardly technical regulations which served little consumer utility, the vanilla standards were a response to the many "vanilla" products which "create the impression and belief in the mind of the purchaser that the product was a genuine vanilla extract, whereas, in fact, it was a mixture of vanilla extract, vanillin, and coumarin, artificially colored with caramel."[2]

Defendant insists no "reasonable consumer would interpret the phrase 'vanilla soymilk' to mean that all of the vanilla flavor in the soymilk comes from vanilla bean extract." Mem. at 2. However, defendant offers no support for this bare assertion in the form of survey data, consumer testimonials or affidavits from its customers purporting to claim they did not expect nor want the Products to only be flavored from vanilla beans. Instead, defendant offers counsel's affirmations, which have no weight at the pleading stage.

---

[1] Letter from McCormick & Company Inc. to HEW Secretary, January 15, 1960; Memorandum of Telephone Conversation between Mr. Alfred Daibock, Commercial Policy Division, Department of State and Tom Bellis, Food Standards Branch, FDA (the FDA stated, "The prime purpose sought to be served by the standards adopted was to promote honest, fair dealing with housewives and other consumers of the flavorings covered by the standards").
[2] Notice of Judgment No. 2241, Adulteration and Misbranding of…Vanilla Extract, United States Department of Agriculture, W. M. Hays, Acting Secretary, Washington, D.C., January 23, 1913.

Further, defendant's arguments ignore the unique requirements connected with labeling vanilla products. FAC ¶ 28-29 ("Since vanilla is the only flavor with its own standard of identity, its labeling is controlled not by the general flavor regulations but by the standards for vanilla ingredients"). *See 62 Cases of Jam v. United States*, 340 U.S. 593, 600, 71 S. Ct. 515, 95 L. Ed. 566 (1951) ("Section 403(g) was designed to protect the public from inferior foods resembling standard products but marketed under distinctive names.")

Even if defendant's argument is accepted as true – the opposite of what is required at this stage – and assuming the regulations are entirely "technical"– its position still fails. Standards of identity "reflect a recognition by Congress of the inability of consumers to determine, solely on the basis of informative labeling, the relative merits of a variety of products superficially resembling each other." *Libby, McNeill & Libby v. United States*, 148 F.2d 71, 73 (2d Cir. 1945).

In *Federal Security Administrator v. Quaker Oats Co.*, 318 U.S. 218, 229, 63 S. Ct. 589, 87 L. Ed. 724 (1943), the respondent had marketed a farina product with added vitamin D, despite federal regulations authorizing this fortification only in a product labeled "enriched farina."

When the products were seized for failure to comply with the regulatory framework, Quaker Oats asserted the same position that defendant does here – its conduct were mere *per se* or technical violations, from which no consumers were harmed or deceived.

The Supreme Court considered Quaker's position as to the absence of consumer deception, but rejected it, finding the "[Food, Drug and Cosmetic] Act does not contemplate that courts should thus substitute their own judgment for that of the Administrator," in considering the consumer-oriented purposes of the farina standards.

Specifically, the hearings for farina products included testimony from expert nutritionists and consumer organizations which were the basis for those regulations:

that such [farina] products, because of the variety and combination of added ingredients, are widely variable in nutritional value; and that *consumers generally lack knowledge of the relative value of such ingredients and combinations of them*…the number, variety and varying combinations of the added ingredients *tend to confuse the large number of consumers* who desire to purchase vitamin-enriched wheat food products but *who lack the knowledge essential to discriminating purchase of them*; that because of this lack of knowledge and discrimination *they are subject to exploitation by the sale of foods described as "enriched," but of whose inferior or unsuitable quality they are not informed.*

*Fed. Sec. Adm'r v. Quaker Oats Co.*, 318 U.S. 218, 226 (emphasis added).

As detailed herein, Plaintiff's claims under GBL §§ 349 and 350, for breach of express and implied warranty, for fraud, for negligent misrepresentation and for unjust enrichment seek only to protect consumers from deceptive behavior.

The requirement that the "vanilla" statements on Defendant's soymilk be truthful and non-misleading is identical in both Plaintiff's state consumer protection claims and in federal law. 21 U.S.C. § 343(a)(1) (prohibiting labeling that is "false or misleading in any particular") and other relevant sections of the FDCA. *Jovel*, 2013 WL 5437065, at *6 ("[A] claim that [the defendant's] representations are false or misleading does not impose a requirement other than those imposed by federal law."); *Larsen v. Trader Joe's Co.*, 917 F. Supp. 2d 1019, 1023 (N.D. Cal. 2013) ("[W]hile federal law does prohibit state food labeling requirements that are not identical to federal requirements, the FDCA and California law contain *identical* prohibitions on false or misleading labeling.").

Because Plaintiff's state law claims that the "vanilla" representation is false and misleading seek to impose requirements that parallel the requirements of § 343(a)(1) and other FDCA sections, the NLEA does not preempt the claims. *Zupnik v. Tropicana Prods., Inc.*, No.  09-cv-6130 2010 WL 6090604, at *2 (C.D. Cal. Feb. 1, 2010) ("[A] private party equipped with a private right of action under state law is able to sue to enforce a state statute identical to § 343(a) . . . .").

14

V.      **Plaintiff States a Claim Under GBL §§ 349 and 350**

      A.      <u>Defendant's Statements Were Materially Misleading</u>

Because Plaintiff's state law claims that the "vanilla" representation is false and misleading seek to impose requirements that parallel the requirements of § 343(a)(1) and other FDCA sections, the NLEA does not preempt the claims. *Zupnik v. Tropicana Prods., Inc.*, No.  09-cv-6130 2010 WL 6090604, at *2 (C.D. Cal. Feb. 1, 2010) ("[A] private party equipped with a private right of action under state law is able to sue to enforce a state statute identical to § 343(a) . . . .").

Defendant argues Plaintiff fails to allege materially misleading conduct as a matter of law because "a reasonable consumer would not perceive the misleading messages alleged by Plaintiff to be communicated about the products, and the remedies suggested by Plaintiff would make no difference in a reasonable consumer's interpretation of the packaging." Mem. at 1.

Further, Defendant states, "No reasonable consumer would interpret the 'vanilla' flavor designator on WestSoy soymilk as an ingredient claim, let alone an exclusive ingredient claim." Mem. at 14. This stance is inconsistent with truthful product labeling and contradicts regulations on the books for over half a century.

Defendant favorably relies upon *Verzani v. Costco Wholesale Corp.*, 641 F. Supp. 2d 291 (S.D.N.Y. 2010), involving a shrimp tray with cocktail sauce with a net weight of 16 OZ. Father and son Verzani sued Costco, dissatisfied that the 16 OZ included the weight of the cocktail sauce.

The court found that the product's name – "shrimp tray with cocktail sauce" – alerted consumers to the fact that the shrimp tray included something more than just shrimp, so it was not deceptive that the product contained less than one pound of shrimp. *Id*. at 294-95. In *Verzani*, the Court noted that its label was technically correct because the tray included one pound of food, inclusive of the shrimp and other items contained in the tray. The court further ruled that the

15

language "unambiguously *does not* promise a purchaser sixteen ounces of *shrimp*." *Id.* at 299. (emphasis in the original).

Here, in contrast to *Verzani*, Defendant's label unambiguously promises the consumer something – a soymilk beverage flavored exclusively with real vanilla – but does not deliver. Defendant's own brief concedes these points, yet simultaneously opposes an argument made solely for demonstrative purposes. Mem. at 19 ("Plaintiff contends… '[Vanilla] with other natural flavors' or '[Vanilla] flavored with other natural flavors'" is "required to completely cure the deception.").

Defendant perpetrates this deception by designating their Product as "Vanilla" without any qualifying terms, which gives the impression that the Products' entire flavor is contributed by the characterizing food ingredient of vanilla beans. FAC ¶ 55, *See* 21 C.F.R. § 101.22(i)(1) (describing a food which contains no simulating artificial flavor and not subject to 21 C.F.R. § 101.22(i)(1)(i)-(iii)).

Notwithstanding that this argument concedes the Product's labeling is inaccurate and fails to disclose material information, the FAC goes further – though it does not have to. FAC ¶ 66 ("If the front label merely stated 'Vanilla Flavor With Other Natural Flavor,' consumers would still be deceived because they are accustomed to the standardized vanilla ingredients – vanilla extract and vanilla flavoring.").

In sum, the Defendant's Products are misleading because they lead a reasonable consumer to believe what is not true: that all of the Product's characterizing flavor, vanilla, derives from the vanilla bean.

B.      Defendant's Critique of the GC-MS Analysis Misunderstands its Purpose at
        Pleading Stage

Notwithstanding that this argument concedes the Product's labeling is inaccurate and fails

to disclose material information, the FAC goes further – though it does not have to. FAC ¶ 66 ("If

the front label merely stated 'Vanilla Flavor With Other Natural Flavor,' consumers would still be

deceived because they are accustomed to the standardized vanilla ingredients – vanilla extract and

vanilla flavoring.").

Notably, defendant failed to address or rebut the issues relating to the FAC's allegations

that the Product's labeling misleads consumers because it contains artificial flavors. FAC ¶ 98

("To the extent the 'Other Natural Flavors' contain vanillin from a natural source and made

through a natural process, yet not derived from vanilla, it is misleading to not represent the Product

as 'Artificially Flavored' on the front label."); ¶ 107 ("A plain reading of the flavor regulations

coupled with the complete absence of non-vanillin marker compounds would require the Product

be designated as 'artificially flavored.'").

The only possible conclusion for this failure, notwithstanding that this issue will likely be

addressed in defendant's reply brief – is that plaintiff's allegations are on point.  *NML Capital,*

*Ltd. v. Republic of Argentina*, No. 05-cv-2434, 2009 WL 1528535, at *1 (S.D.N.Y. May 29, 2009)

(holding that defendant waived an argument by failing to raise it in its opposition to the plaintiffs'

motion).

Defendant's attempt at disputing the FAC's allegations related to the Product's actual

components is an unscientific broadside to the gas chromatography-mass spectrometry ("GC-

MS") report. Mem. at 16 ("Plaintiff's Chromatography Analysis Is Worthless."). The "simplicity,

17

sensitivity and effectiveness in separating and identifying food components has made GC-MS one of the most important tools in analytical chemistry today."[3]

Whether the GC-MS analysis is a valid method to extract the volatile flavor compounds from defendant's soymilk is a question suited for summary judgment.  Defendant's critique of plaintiff's GC-MS report misunderstands its applicability at the pleading stage.  The report is not used to "prove" defendant's Products contain added vanillin and synthetic maltol, because the answer to this question is exclusively within the control of defendant.  The report, coupled with the allegations, are intended to "nudge" the FAC into "plausible" and not "probable."

Defendant hypothesizes that the "failure to detect any chemical in an analysis such as this could be the fault of the test itself, especially where the chemicals are expected to be present in very small concentrations in a lightly flavored product such as soymilk." Mem. at 22.

This criticism also assumes that the extraction of volatile components is performed manually, by a clumsy chemist instead of through specialized gas which passes over the sample, drawing out the volatiles.

Assuming the Product only used vanilla and at an expected amount of 1% of the total product weight, the vanillin level would range from 0.001-0.0015 Conc. PPM w/w. The amount of p-hydroxybenzaldehyde and p-hydroxybenzoic acid should be 10-15 times less than the vanillin.

In contrast to the expected amount of vanillin if the source was real vanilla, the Product analysis indicates 38.59 ppm of vanillin, and an absence of the other marker compounds. FAC ¶ 85.  If p-hydroxybenzaldehyde and p-hydroxybenzoic were present at levels greater than or equal to 0.01 Conc. PPM w/w, they would have been detected since the peak table shows other compounds at this concentration.

---

[3] Gasworld, GC-MS in the food sector, Feb. 2014.

Defendant then claims the "fatal flaw" of the GC-MS analysis is the absence of a "control." Mem. at 22.  Such a statement misunderstands the way this technique is applied, and the obvious constraints given defendant has not provided a sample of its soymilk without added flavoring.

C.     Defendant Fails to Rebut the Core Allegations About Vanillin

Defendant distorts the central allegations that the Product contains undisclosed artificial flavors. Mem. at 24  ("Plaintiff believes that she detected the flavor enhancer maltol in the mass spectroscopy, and seem to believe this the smoking gun showing that the Product really contains artificial vanilla flavor.").

While the FAC does allege maltol is an artificial flavor detected in the Product, the bulk of the artificial flavor allegations are based on the "High Levels of Non-Vanilla Vanillin." FAC, Section V.

The FAC provides detailed analysis of how vanillin must be disclosed when added to real vanilla. *See* FAC Exhibit A, FDA Letter, Quinn to Molina, January 17, 1980 ("the general principles of 21 C.F.R. 102.5 should apply" when a product contains vanilla with other natural flavors so consumers are not misled as to the amount of vanilla.).

The "standards of identity for vanilla extract (21 C.F.R. § 169.175) and vanilla flavoring (21 C.F.R. § 169.177) do not provide for the use of vanillin" such that even "natural vanillin" may not "be used to make natural vanilla flavors." *See* FAC Exhibit B, FDA Letter, Ferré-Hockensmith to Brownell, April 19, 2005; *see also* 21 C.F.R. § 169(a)(1)-(5) (listing glycerin, propylene glycol, sugar dextrose and corn sirup as only optional ingredients for vanilla extract.).

Defendant includes vanillin from non-vanilla sources in the Product but the implication from failing to disclose this powerful ingredient is that consumers get the false impression the "other natural flavors" are "'natural vanilla flavor[s]' because it is not derived from vanilla beans." *See* FAC Exhibit D, FDA Letter, Belay to Weisz, October 10, 2008; FAC ¶ 103.

The FDA letters do nothing more than support the pre-existing vanilla-vanillin standard, which requires vanillin be designated as an artificial flavor when used with vanilla. *see* Vanilla-vanillin extract at 21 C.F.R. § 169.180(b) ("The specified name of the food is 'Vanilla-vanillin extract _-fold' or '_-fold vanilla-vanillin extract', followed immediately by the statement 'contains vanillin, an artificial flavor (or flavoring)'"); FAC Exhibit C, FDA Letter, Ferré-Hockensmith to Brownell, August 5, 2008 (naturally derived vanillin may be labeled a "natural flavor" only outside the context of the standardized vanilla ingredients "under sections 169.180, 169.192 in 21 C.F.R.")

Defendant's use of vanillin with vanilla necessitates that the Product be labeled "artificially flavored" to alert consumers to the quality of the product they will be purchasing. *See Koenig*, 995 F. Supp. 2d at 287-88 (distinguishing *Verzani* where a reasonable consumer might focus on the most prominent portion of a product label that is potentially deceptive to a reasonable consumer);

The FDA's industry guidance letters are evidence in itself that a reasonable consumer may be deceived or confused based on the representations made by Defendant regarding the vanilla content of the Product. *See In re Frito-Lay N. Am., Inc. All Natural Litig.*, 12-md-2413, 2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013) (holding that what a reasonable consumer would believe the term "natural" to mean is not resolvable on a motion to dismiss where "the FDA has acknowledged that the term's use is confusing to consumers.").

Defendant offers no refutation to these arguments because it cannot do so. Either the Product derives all its vanilla flavor from vanilla beans – which Defendant concedes it does not – or it is deceptively labeled because it contains vanillin, requiring the Product to be labeled as "artificially flavored."

D.     Plaintiff Sufficiently Alleges That She Has Suffered an Injury as a Result of Defendant's Deceptive Conduct

"The law is clear that economic injury – including that caused by paying a premium – is sufficient to establish injury for standing purposes." *Kacocha v. Nestle Purina Petcare Co.*, No. 15-cv-5489 (S.D.N.Y. Aug. 11, 2016) (citing *Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*, 710 F.3d 71, 85 (2d Cir. 2013) ("Even a small financial loss is an injury for purposes of Article III standing."). Here, Plaintiff clearly alleges that she paid a premium for the misleadingly labeled soymilk. FAC ¶ 122.

E.     Numerous Questions of Fact Exist Which Make Disposition of Case at Motion to Dismiss Stage Inappropriate

Whether a reasonable consumer would be misled is usually a question of fact, and courts are reluctant to dismiss such claims on a motion to dismiss. *See, e.g.*, *Carias v. Monsanto Co.*, No. 15-cv-03677, 2016 WL 6803780, at *9 (E.D.N.Y. Sept. 30, 2016) ("[T]he instant litigation may very well turn on discrete factual questions"); *Sitt v. Nature's Bounty, Inc.*, No. 15-cv-4199, 2016 WL 5372794, at *8 (E.D.N.Y. Sept. 26, 2016) ("Usually the reasonable consumer determination is a question of fact") (citations omitted) (quotations omitted); *Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-cv-03826, 2015 WL 5579872, at *4, *13–23 (E.D.N.Y. Sept. 22, 2015) (declining to dismiss complaint, noting "A federal trial judge, with a background and experience unlike that of most consumers is hardly in a position to declare that reasonable consumers would not be misled" (citations omitted) (quotations omitted); *Silva v. Smucker Nat. Foods, Inc.*, No. 14-cv-06154, 2015 WL 5360022, at *10 (E.D.N.Y. Sept. 14, 2015) ("What a reasonable consumer's interpretation of a seller's representation might be is generally an issue of fact that is not appropriate for decision on a motion to dismiss."); *Paulino v. Conopco, Inc.*, No. 14-cv-05145, 2015 WL 4895234, at *1, *5–6 (E.D.N.Y. Aug. 17, 2015) ("A reasonable juror could reach the conclusion that the label 'Naturals' means that the product is at least mostly comprised of natural

ingredients"); *Ackerman*, 2010 WL 2925955at *6, *22–23 (court cannot conclude that a reasonable consumer would not be misled as a matter of law).

The bulk of Defendant's arguments are not relevant on a motion to dismiss, which accepts as true the allegations of the complaint and supporting documents. *ATSI Communications Inc. v. Shaar Fund*, 493 F. 3d 87, 93 (2d Cir. 2007).

Here, Defendant merely offers numerous conclusory statements about what a reasonable consumer will believe. Mem. at 1 ("[T]he remedies suggested by Plaintiff would make no difference in a reasonable consumer's interpretation of the packaging"); Mem. at 7 ("[I]t is implausible that reasonable consumers perceive any, let alone all, of these meanings from the mere designation of a product as 'vanilla soymilk'"); Mem. at 14 ("There is no basis to allege that consumers receive any of Plaintiff's alleged ingredient claims from the Product's packaging.").

These are all statements in which Defendant seeks to speak for reasonable consumers. "What a reasonable consumer's interpretation of a seller's representation might be is generally an issue of fact that is not appropriate for decision on a motion to dismiss." *Silva* 2015 WL 5360022, at *10. *See also*, *Koenig*, 995 F. Supp. 2d at 287-88 (holding that court cannot decide on a motion to dismiss that a reasonable consumer would not focus on a specific part of a label and overlook smaller disclaimer text).

Defendant's memorandum is bereft of supporting documents on the flavor makeup of its products, affidavits from flavor suppliers and survey evidence that may point to what a reasonable consumer would believe under the circumstances detailed in the FAC.

Rule 12(b) provides in relevant part:

"If, on a motion asserting the defense numbered (6) to dismiss for a failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."

Thus, if Defendant wishes to make these arguments regarding its own interpretation of the FAC, it can do so, but a motion to dismiss is an improper device. A Rule 12(b)(6) motion is addressed to the face of the pleading. *Goldman v. Belden*, 754 F.2d 1059, 1065 (2d Cir. 1985).

Should the Court wish to consider Defendant's conclusory statements, the motion should be treated as one for summary judgment and the parties should be given the opportunity to conduct appropriate discovery. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 154 (2d Cir. 2002).

## VI.    Plaintiff Properly Pleads Common Law Claims

### A.    Plaintiff Properly Pleaded a Claim of Negligent Misrepresentation

In New York, "It is well settled that a claim for negligent misrepresentation requires the plaintiff to demonstrate (1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information. *Mandarin v. Wildenstein*, 16 N.Y.3d 181, 173 (2011) (citing *J.A.O.Acquisition Corp. v. Stavitsky*, 8 NY3d 144, 148 (2007) (internal quotations omitted). Defendants claim Plaintiff cannot plead negligent misrepresentation because there existed no special relationship and no misrepresentation. These assertions disregard facts asserted in the complaint as well as established law in New York State.

A special relationship sufficient to establish a claim of negligent representation existed between Plaintiff and Defendant. A relationship is considered to approach that of privity if: "(1) the defendant makes a statement with the awareness that the statement was to be used for a

particular purpose; (2) a known party or parties rely on this statement in furtherance of that purpose; and (3) there is some conduct by the defendant linking it to the party or parties and evincing [the] defendant's understanding of their reliance." *Greene v. Gerber Products Co.*, 262 F. Supp 3d 38, 75 (E.D.N.Y. 2017) (citing *Aetna Cas. And Sur. V. Aniero Concrete Co., Inc.*, 404 F.3d 566, 584 (2d Cir. 2005)).

As to negligent misrepresentation, "because casual statements and contacts are prevalent in business, liability in the commercial context is imposed only on those persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified." *Greene* F. Supp 3d at 75 (internal quotation marks omitted) (citing *Eternity Glob. Master Fund. Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 188 (2d Cir. 2004). Where a plaintiff fails to allege the existence of a special relationship, negligent misrepresentation is still properly pled where the plaintiff "emphatically" alleges (1) the person making the representation held or appeared to hold unique or special expertise and (2) the speaker was aware of the use to which the information would be put and supplied it for that purpose. *Id.* at 75 (citing *Eternity Glob.*, 375 F.3d at 188).

First, Plaintiff adequately alleges that Defendant held a unique or special expertise. FAC ¶ 156. Second, it defies logic that Defendant was not aware that consumers would rely upon the representations put on the front label of its soymilk products.

B.    Plaintiff Properly Pleaded a Claim of Fraud

Defendant argues that Plaintiff's fraud allegations fail to be plead with the required specificity pursuant to Fed. R. Civ. P. 9(b). Mem. at 23-24. To satisfy Rule 9(b), "the complaint must: (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo*

24

*Sec.*, LLC, 797 F.3d 160, 171 (2d Cir. 2015). (internal quotation omitted). "Rule 9(b) requires only that Plaintiffs plead, with particularity, facts from which it is plausible to infer fraud; it does not require Plaintiffs to plead facts that make fraud more probable than other explanations." *Id.* at 175.

Here, Plaintiff has identified defendant as the speaker of the representations. FAC ¶ 169.

Plaintiff alleges Defendant made numerous fraudulent statements indicating that "the Products contain sufficient amounts of the highlighted ingredient, vanilla, to independently characterize the taste or flavor of the Products." *Id*.

Plaintiff alleges Defendant made the misleading representations on the front label of their vanilla soymilk. FAC ¶ 1-5.

Finally, Plaintiff explains why the statements are fraudulent. Defendant's labeling of their soymilk is fraudulent because "Plaintiff and class members desired to purchase, consume and use products or services which were as described and marketed by defendant and expected by reasonable consumers, given the product type." FAC ¶ 147.

The allegations in the Complaint thus meet the "primary purpose of Rule 9(b)" which "is to afford defendant fair notice of the plaintiff's claim and the factual ground upon which it is based." *Ross v. Bolton,* 904 F.2d 819, 823 (2d Cir. 1990).

C.   Plaintiff Adequately Alleged Breach of Express Warranty Claims

"To state a claim for breach of an express warranty, "a plaintiff must allege an affirmation of fact or promise by the seller, the natural tendency of which was to induce the buyer to purchase and that the warranty was relied upon the plaintiff's detriment." *Buonasera v. Honest Co., Inc.*, 208 F. Supp 3d 555, 567 (S.D.N.Y. 2016) (internal quotations omitted) (citing *Ault v. J.M. Smucker Co.*, No. 13-cv-3409, 2014 WL 1998235, at *6 (S.D.N.Y. 2014).

Specifically, to state a claim for breach of an express warranty under New York Law, a plaintiff must allege (1) the existence of a material statement amounting to a warranty, (2) the

buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach. *Goldemberg v. Johnson & Johnson Consumer Cos*., 8 F. Supp 3d 467, 482 (S.D.N.Y. 2014) (citing *Avola v. La.-Pac.* Corp*.,* No. 11-cv-4053, 2013 WL 4647535, at *6 (E.D.N.Y. Aug. 28, 2013). Further, "any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty." *Ault*, 2014 WL 1998235, at *6.

Here, Defendant contends simply that there was no express warranty. Mem. at 21 ("Express warranty claims must be founded on express representations – that is a literal affirmation of fact or promise about the specific thing Plaintiffs allege to be untrue").

Plaintiff alleges that (1) defendant expressly warranted that the vanilla soymilk had properties it did not, *viz*, containing only flavor from vanilla beans to flavor the soymilk; (2) defendant breached the express warranty on the label of, and/or in the advertising of their vanilla soymilk; (3) defendant made such express warranty knowing the purpose for which its "vanilla soymilk" was to be used and advocating its use for such purpose; (4) defendant's claims as to the source and composition of flavoring – only from vanilla – did not conform to the express warranty made by Defendants and (5) Plaintiff purchased the vanilla soymilk based upon these representations. FAC ¶¶ 160-167.

"Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty." *Goldemberg v. Johnson & Johnson Consumer Comp.*, 8 F. Supp. 3d 467, 482 (S.D.N.Y. 2014) (quoting *Avola v. La.-Pac. Corp.*, No. 11-cv-4053, 2013 WL 4647535, at *6 (E.D.N.Y. Aug. 28, 2013).

In *Goldemberg*, the court held that the defendant's motion to dismiss the claims for breach of express warranty must be denied where defendant advertised on their labels and marketing

materials that their products were "Active Naturals" when the products contained mostly synthetic ingredients. *Id*. at 482-83.

At bar, Defendant represents its soymilk is flavored exclusively with vanilla, a representation which induced Plaintiff into purchasing Defendant's products.

D.      Plaintiff's Claim of Unjust Enrichment Is Not Duplicative

Defendant argues that the Court should dismiss Plaintiff's unjust enrichment claim because it is duplicative. Mem. at 24. However, "[u]nder Rule 8(e)(2) of the Federal Rules of Civil Procedure, a plaintiff may plead two or more statements of a claim, even within the same count, regardless of consistency." *Henry v. Daytop Vill., Inc.,* 42 F.3d 89, 95 (2d Cir. 1994).

To the extent that this Court finds that Plaintiff do not state claims pursuant to the GBL, fraud, negligent representation or breach of express warranty, the Court could hold that Plaintiff's unjust enrichment claim is viable. *Cummings v. FCA US LLC*, 401 F. Supp. 3d 288, 316-17 (N.D.N.Y. 2019). ("Plaintiff's claim for unjust enrichment arises outside of the scope of the Limited Warranty and is consequently not barred.").

Thus, because questions of fact remain as to all of Plaintiff's claims, dismissal of Plaintiff's unjust enrichment claim at this stage is premature. *Huang v. iTV Media, Inc.*, 13 F. Supp. 3d 246, 261 (E.D.N.Y. 2014) (declining to dismiss unjust enrichment claim as duplicative at motion to dismiss stage); *Burton v. Iyogi, Inc.*, No. 13-cv-6926, 2015 WL 4385665, at *11 (S.D.N.Y. Mar. 16, 2015) (denying motion to dismiss New York unjust enrichment claim and stating that "it is well-settled that parties may plead in the alternative"); *Cohn v. Lionel Corp.,* 289 N.Y.S.2d 404, 408 (1968) ("Undeniably, a plaintiff is entitled to advance inconsistent theories in alleging a right to recovery."); *Winick Realty Grp. LLC v. Austin & Assocs.,* 857 N.Y.S.2d 114, 115 (1st Dep't 2008) ("[S]ince plaintiff is entitled to plead inconsistent causes of action in the alternative, the

quasi-contractual claims are not precluded by the pleading of a cause of action for breach of an oral agreement.").

## VII.    Plaintiff Has Standing to Seek Injunctive Relief

Plaintiff has standing to pursue injunctive relief because she lacks the ability to rely on the Products' labels in the future, causing her to avoid purchasing the Products even though she would *if* she could trust the labels. Plaintiff's contention contends that she would not have bought the Products or would have paid less for them supports the supposition she cannot rely on Defendant's labels to convey accurate and truthful information. FAC ¶ 120.

This constitutes an imminent threat of future harm sufficient to satisfy Article III's injury in fact requirement. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181–85 (2000).

Recently in *Jackson-Mau v. Walgreen Co.*, 18-cv-04868, 2019 WL 5653757 (E.D.N.Y. Oct. 31, 2019), the court found that the plaintiff could seek injunctive relief because her complaint stated she would purchase the product "again if she could be sure that the bottle actually contains what it is supposed to contain." *Jackson-Mau*, 2019 WL 5653757, at *3; *see also Goldemberg v. Johnson & Johnson Consumer Cos.*, 317 F.R.D. 374, 397 (S.D.N.Y. 2016) (holding that the fact that "Plaintiff would continue to purchase the Products in the future if the misleading labeling is corrected is sufficient to demonstrate an intent to purchase products in the future that subjects them to future harm").

Similarly, in *Davidson v. Kimberly-Clark Corp.*, the United States Court of Appeals for the Ninth Circuit held as follows:

> We hold that a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an "actual and imminent, not conjectural or hypothetical" threat of future harm. Knowledge that the advertisement or label was

> false in the past does not equate to knowledge that it will remain false in the future.
> In some cases, the threat of future harm may be the consumer's plausible allegations
> that she will be unable to rely on the product's advertising or labeling in the future,
> and so will not purchase the product although she would like to.

*Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969–70 (9th Cir. 2018) (footnote omitted)

(citation omitted).

Furthermore, many courts have concluded that the inability to rely on the labels in the

future, as alleged in the FAC, constitutes a threat of harm and that to hold otherwise would

eviscerate the New York consumer protection statute. *See, e.g.*, *Belfiore v. Procter & Gamble Co.*,

94 F. Supp. 3d 440, 445 (E.D.N.Y. 2015) ("Federal courts 'have held that plaintiffs have standing

to seek injunctive relief based on the allegation that a product's labeling or marketing is misleading

to a reasonable consumer,' because to 'hold otherwise would effectively bar any consumer who

avoids the offending product from seeking injunctive relief.'" (quoting *Ackerman* at *2–3, *14–

15, *15 n.23 (E.D.N.Y. July 18, 2013)).

For all the foregoing reasons, Plaintiff has standing to seek injunctive relief.

## Conclusion

For the foregoing reasons, the Court should deny Defendant's Motion in its entirety or in

the alternative, grant leave to amend or dismiss without prejudice.

Dated:   June 5, 2020

<div style="margin-left:50%">

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
_____
Spencer Sheehan
505 Northern Blvd Ste 311
Great Neck NY 11021-5101
Tel: (516) 303-0552
Fax: (516) 234-7800
*spencer@spencersheehan.com*
E.D.N.Y. # SS-8533
S.D.N.Y. # SS-2056

</div>

Reese LLP
Michael R. Reese
100 W 93rd St Fl 16
New York NY 10025-7524
Telephone: (212) 643-0500
Fax: (212) 253-4272
*mreese@reesellp.com*

1:19-cv-09677-PKC
United States District Court
Southern District of New York

Natasha Barreto, individually and on behalf of all others similarly situated,

                    Plaintiff,

          -against-


Westbrae Natural, Inc.,


                    Defendant


Plaintiff's Memorandum of Law in Opposition to Defendant's
Motion to Dismiss the First Amended Complaint


Sheehan & Associates, P.C.
505 Northern Blvd., #311
Great Neck, NY 11021
Tel: (516) 303-0552
Fax: (516) 234-7800


Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts
of New York State, certifies that, upon information, and belief, formed after an inquiry
reasonable under the circumstances, the contentions contained in the annexed documents are not
frivolous.

Date:   June 5, 2020

                                        /s/Spencer Sheehan
                                        Spencer Sheehan

**Certificate of Service**

I certify that on June 5, 2020, I served and/or transmitted the foregoing by the method below to the persons or entities indicated, at their last known address of record (blank where not applicable).

|  | CM/ECF | First-Class Mail | Email | Fax |
|---|---|---|---|---|
| Defendant's Counsel | ☒ | ☐ | ☐ | ☐ |
| Plaintiff's Counsel | ☒ | ☐ | ☐ | ☐ |
| Courtesy Copy to Court | ☐ | ☐ | ☐ | ☐ |

/s/ Spencer Sheehan