UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
NATASHA BARRETO, individually and on
behalf of all others similarly situated,

                        Plaintiff,                      19-cv-9677 (PKC)

       -against-                            OPINION
                                                                    AND ORDER

WESTBRAE NATURAL, INC.,

                        Defendant.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

Plaintiff Natasha Barreto brings this putative class action against defendant Westbrae Natural, Inc. ("Westbrae") alleging that the label of the vanilla-flavored soymilk product distributed and sold by Westbrae is deceptive and misleading. Barreto's First Amended Complaint (the "Complaint") asserts claims under sections 349 and 350 of the New York General Business Law ("GBL"), negligent misrepresentation, fraud, breach of express and implied warranty and unjust enrichment. (Doc 14). Westbrae now moves to dismiss the Complaint under Rules 12(b)(1) and (6), Fed. R. Civ. P.

The front label of Westbrae's product describes it as "Vanilla Soymilk" and the ingredient list discloses "Natural Vanilla Flavor With Other Natural Flavors." The Complaint's core allegation is that this labeling violates specific regulations of the Food and Drug Administration ("FDA"). However, enforcement of FDA regulations is reserved to the government, and for her claims to survive she must allege a deceptive or misleading act or practice and not merely a violation of a regulation. Barreto attempts to plead claims by alleging that the labelling is deceptive and misleading in misrepresenting the source of the product's vanilla flavor

as being derived exclusively or predominately from the vanilla plant. Reviewing Barreto's Complaint in the light most favorable to her, Barreto does not plausibly allege that the labeling on Westbrae's product would deceive or mislead a reasonable consumer. Westbrae's motion to dismiss will be granted.[1]

BACKGROUND

Westbrae manufactures, distributes, and sells unsweetened vanilla-flavored soymilk beverages. (Compl. ¶ 1). The front label of Westbrae's product contains the words "Vanilla" and "Soymilk." (Compl. ¶ 3). The product's ingredient list states that the product includes "Natural Vanilla Flavor With Other Natural Flavors." (Compl. ¶ 4).

Vanilla is a common ingredient used to flavor food. (Compl. ¶ 14). The source of the "natural vanilla" flavor is a plant, *V. planifolia*. (Compl. ¶ 13). This plant produces the vanilla bean from which the natural vanilla flavor, or vanilla extract, is derived. The main flavor component of vanilla is vanillin. (Compl. ¶ 23). According to the Complaint, vanillin can be obtained from the vanilla plant or derived from natural or artificial sources other than the vanilla plant. However, only 1-2% of vanillin in commercial use today is obtained from the vanilla plant. (Compl. ¶ 26). Most vanillin that purports to be a "natural flavor" is derived from natural source material other than the vanilla plant. (Compl. ¶¶ 31–33). For purposes of this Opinion "natural vanilla" will be used to denote vanilla flavor derived from the vanilla plant and "added vanillin" refers to vanilla flavor derived from sources other than the vanilla plant.

One of the law firm's representing Barreto secured a Gas-Chromatography-Mass Spectrometry analysis ("GC-MS") of Westbrae's product. Although the test detected vanillin, it did not detect other marker compounds that are present in small concentrations when vanillin is

---

[1] The Court has also considered the supplemental briefing and notices of supplemental authority submitted by the parties. (Docs 25, 27–32).

derived from natural vanilla. (Compl. ¶¶ 85–88). Although the Complaint is equivocal about the presence of any natural vanilla in the product,[2] in briefing the motion to dismiss, Barreto asserts that the Complaint alleges the "product contains de minimis vanilla." (Doc 27 at 1). The GC-MS analysis also detected the flavor enhancer maltol, which according to plaintiff "does not contribute a flavor of its own but is used to enhance and substitute for real vanilla, by increasing the sweetness of a food." (Compl. ¶ 96) (internal quotations omitted). Barreto contends that maltol is "designated" as a "synthetic flavoring substance" in certain FDA regulations, a legal conclusion with which Westbrae disagrees. (Compl. ¶ 97).

Barreto alleges that the front label of Westbrae's product gives consumers the impression that the vanilla flavor is contributed entirely or predominantly from natural vanilla and deceives consumers who expect the product to contain more natural vanilla than it actually does. (Compl. ¶¶ 55, 107, 113). Barreto alleges that the front label is misleading because it does not disclose that it contains "Other Natural Flavors" as is disclosed on the ingredient panel of the product. (Compl. ¶ 59). From the GS-MS testing, Barreto concludes that its vanilla flavor, at least in part, comes from added vanillin and maltol. (Compl ¶¶ 97–98). From these factual allegations, Barreto contends that the product's labeling violates the Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 et seq. and the food labeling regulations adopted pursuant to the statute,

---

[2] At one point, the Complaint takes the position that if natural vanilla is present, it is in a *de minims* amount; elsewhere in the pleading it alleges that natural vanilla is present in a *de minims* amount. Compare (Compl. ¶ 91) ("Given the total absence of the non-vanillin marker compounds and the high level of vanillin, the logical conclusion is that *if* real vanilla is used, it is in trace or *de minimis* amounts not detectable by advanced scientific means.") (emphasis in original), with (Compl. ¶ 113) ("The identification of 'Natural Vanilla Flavor With Other Natural Flavors' on the ingredient list is not sufficient to cure the misleading front label designation of 'Vanilla' because it fails to tell consumers that the Product contains a de minimis amount of vanilla and that the vanilla taste is supplied by non-vanilla vanillin and maltol.").

specifically 21 C.F.R § 101.22, "Foods; Labeling of Spices, Flavorings, Colorings, and Chemical Preservatives." (See, e.g., Compl. ¶¶ 63–64, 107).

The Complaint alleges that Barreto relied on the alleged misrepresentations when purchasing Westbrae's product and would not have done so or would have paid less for the product had she known the vast proportion of the vanilla flavor was not derived from vanilla beans. (Compl. ¶¶ 119–20, 137).

RULE 12(b)(6) STANDARD

Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In assessing the sufficiency of a pleading, a court must disregard legal conclusions, which are not entitled to the presumption of truth. Id. Instead, the Court must examine the well-pleaded factual allegations, which are accepted as true, and "determine whether they plausibly give rise to an entitlement to relief." Id. at 678–79. "Dismissal is appropriate when 'it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.'" Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE, 763 F.3d 198, 208–09 (2d Cir. 2014) (quoting Conopco, Inc. v. Roll Int'l, 231 F.3d 82, 86 (2d Cir. 2000)).

A court reviewing a Rule 12(b)(6) motion "does not ordinarily look beyond the complaint and attached documents in deciding a motion to dismiss brought under the rule." Halebian v. Berv, 644 F.3d 122, 130 (2d Cir. 2011) (citing Staehr v. Hartford Fin. Servs. Grp., Inc., 547 F.3d 406, 425 (2d Cir.2008)). A court may, however, "consider 'any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference . . . and documents that the plaintiffs either possessed or knew about and upon

which they relied in bringing the suit.'" Stratte-McClure v. Morgan Stanley, 776 F.3d 94, 100 (2d Cir. 2015) (first alteration in original) (quoting Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000)).

DISCUSSION

    I.    <u>New York General Business Law Sections 349 and 350</u>

Section 349 of the GBL declares deceptive acts and practices unlawful and section 350 declares false advertising unlawful. "The standard for recovery under [section] 350, while specific to false advertising, is otherwise identical to Section 349." Denenberg v. Rosen, 71 A.D.3d 187, 194 (1st Dep't 2010) (quoting Goshen v. Mutual Life Ins. Co. of N.Y., 98 N.Y.2d 314, 324 n.1 (2002)). The elements of a cause of action under both sections 349 and 350 are that: "(1) the challenged transaction was 'consumer-oriented'; (2) defendant engaged in deceptive or materially misleading acts or practices; and (3) plaintiff was injured by reason of defendant's deceptive or misleading conduct." Id. (citing Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, 85 N.Y.2d 20, 25 (1995)). On its motion, Westbrae does not contest that the labeling of its product was consumer oriented or that Barreto plausibly alleges that she was injured by reason of the allegedly deceptive conduct. Its motion focuses on the deceptive or misleading element.

To be actionable, the alleged deceptive act must be "likely to mislead a reasonable consumer acting reasonably under the circumstances." Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 26 (1995); see also Orlander v. Staples, Inc., 802 F.3d 289, 300 (2d Cir. 2015). In determining whether a reasonable consumer would be misled, "[c]ourts view each allegedly misleading statement in light of its context on the product label or advertisement as a whole." Pichardo v. Only What You Need, Inc., 20-cv-493 (VEC), 2020 WL 6323775, at *2 (S.D.N.Y. Oct. 27, 2020) (citing Wurtzburger v. Kentucky Fried Chicken, 16-cv-

08186, 2017 WL 6416296, at *3 (S.D.N.Y. Dec. 13, 2017)); see also Fink v. Time Warner Cable, 714 F.3d 739, 742 (2d Cir. 2013) ("In determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial."). "It is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." Fink, 714 F.3d at 741 (citing Freeman v. Time, Inc., 68 F.3d 285, 289 (9th Cir.1995) and Marine Midland Bank, 85 N.Y.2d at 26).

The Court concludes that the Complaint fails to plausibly allege that the product's label would be likely to deceive or mislead a reasonable consumer. The ingredient panel states that the product contains "Natural Vanilla Flavor With Other Natural Flavors," and Barreto does not allege that there is no natural vanilla present as a flavoring. The Complaint itself negates a plausible claim that a reasonable consumer would expect that a product with a vanilla flavor would derive most or all of its vanillin – the main flavor component of vanilla – solely from natural vanilla. According to Barreto's Complaint, "only 1-2% of vanillin in commercial use is vanillin obtained from the vanilla plant," and "almost all vanillin has no connection to the vanilla bean." (Compl. ¶ 26). Thus, according to the Complaint, most commercial products that taste like vanilla do not derive their vanilla flavor entirely from the vanilla plant.

In assessing the product's packaging as a whole, a reasonable consumer would conclude that the soymilk has a vanilla flavor and at least some of it is natural vanilla flavor. There is no claim anywhere on the packaging that natural vanilla is the predominant source of the vanilla flavor and, as discussed below, the Complaint does not adequately allege the presence of artificial flavors. The Complaint also does not allege the soymilk fails to have a vanilla taste or that the taste would be any different if it came exclusively from natural vanilla. Accepting as true Barreto's allegation that natural vanilla does not predominantly provide the vanilla flavor, she has failed to

plausibly allege that Westbrae's label is materially deceptive or misleading to a reasonable consumer.

Barreto asserts that the non-natural vanilla sources of vanillin in the product are not from natural flavors, as the ingredient panel states. While the Complaint does not plausibly allege that there is no natural vanilla in the product, it does plausibly allege that Westbrae's product contains added vanillin because the GS-MS analysis did not detect other marker compounds that would be present if a large percentage of the vanillin was derived from natural vanilla. However, the analysis on which the Complaint heavily relies does not state or otherwise plausibly support the conclusion that the added vanillin comes from artificial rather than natural sources. Barreto alleges that vanillin, while not derived from the vanilla plant, is often derived from a natural source material which undergoes a natural production process. (Compl. ¶¶ 31–33). The results of the GS-MS analysis list the detected ingredients as including "vanillin" but it does not purport to identify the source of vanillin as natural or artificial. Westbrae's ingredient list states that its "Vanilla Soymilk" contains "other natural flavors." Barreto does not plausibly allege that the added vanillin detected by the GS-MS analysis was derived from artificial rather than natural sources.

Barreto also alleges that the GS-MS analysis detected the substance maltol and that the substance is artificial. But, according to common dictionaries, maltol is "[a] derivative of pyran occurring in larch bark, chicory, and in roasted malt, and used as a flavoring agent . . . ."[3] Barreto alleges that the maltol found in Westbrae's product is a "synthetic flavoring substance" as defined

---

[3] *Oxford English Dictionary*, Oxford, https://premium.oxforddictionaries.com/us/definition/american_english/maltol maltol (last accessed Jan. 7, 2021); *Merriam-Webster.com Dictionary*, Merriam-Webster, https://www.merriam-webster.com/dictionary/maltol (last accessed Jan. 7, 2021) (defining maltol as "a crystalline compound $C_6H_6O_3$ derived from gamma-pyrone, found especially in pine needles, larch bark, and chicory, and formed when streptomycin is hydrolyzed and when barley and other grains are roasted.").

in a regulation. (Compl. ¶ 97). Barreto points to an FDA regulation, 21 C.F.R. § 172.515(b), which lists maltol as a synthetic flavor that may be safely used in food.[4] But the definition of artificial flavor in turn "includes the substances listed in §§ 172.515(b) . . . except where these are derived from natural sources." 21 C.F.R. § 101.22(a)(1). Although the GS-MS analysis detected maltol, it contains no finding whether the maltol was derived artificially or naturally. See Marotto v. Kellogg Co., No. 18-cv-3545 (AJH), 2018 WL 10667923, at *7–8 (S.D.N.Y. Nov. 29, 2018) (finding plaintiff alleged that a product contains the artificial form of an ingredient where it "specifies in detail the chemical differences between the natural and artificial forms of the ingredients and identifies differences in their manufacture"). Barreto's Complaint relies heavily on the GS-MS analysis but contains no allegation that the analysis found that the maltol was derived from artificial rather than natural sources. Her complaint has not shown facts, Rule 8(a), Fed. R. Civ. P., that would support the conclusion that the maltol is non-natural.

Three courts in this district have recently dismissed claims on motions to dismiss that the labeling of a vanilla-flavored product was misleading because the vanilla flavor did not come exclusively from natural vanilla. See Cosgrove v. Blue Diamond Growers, 19-cv-8993, 2020 WL 7211218 (S.D.N.Y. Dec. 07, 2020) (Judge Marrero); Pichardo v. Only What You Need, Inc., 20-cv-493, 2020 WL 6323775 (S.D.N.Y. Oct. 27, 2020) (Judge Caproni); Steele v. Wegmans Food Markets, Inc., 472 F. Supp. 3d 47 (S.D.N.Y. 2020) (Judge Stanton); see also Clark v. Westbrae Nat., Inc., 20-cv-03221 (JSC), 2020 WL 7043879, at *4 (N.D. Cal. Dec. 1, 2020) (dismissing claim that a reasonable consumer would be misled by the labeling of the same Westbrae product at issue here under California's consumer protection laws).

---

[4] Barreto also cites in her Complaint to "Maltol, UL Prospector, Bryan W. Nash & Sons Ltd.1" for support. (Compl. ¶ 96 n.2). Westbrae provided a hyperlink to this source in its moving brief, but the Court has not been able to access this hyperlink or otherwise locate the source. The Court has not considered this material in deciding the motion.

Judge Caproni observed that "stating that a protein drink is vanilla flavored when it is, even without clarifying the source of the vanilla, does not mislead because reasonable consumers would expect a vanilla taste, and that is exactly what they get." Pichardo, 2020 WL 6323775, at *4. Judge Marrero concluded that "the Product is not misleading because a reasonable consumer would associate the representation of 'Vanilla' – with no additional language modifiers – to refer to a flavor and not to vanilla beans or vanilla extract as an ingredient." Cosgrove, 2020 WL 7211218, at *3. Finally, Judge Stanton explained his similar reasoning as follows:

> [E]ven if vanilla or bean extract is not the predominant factor, if the sources of the flavor are natural, not artificial, it is hard to see where there is deception. What is misrepresented? The ice cream is vanilla flavored. The sources of the flavor are natural, not artificial.

Steele, 472 F. Supp. 3d at 50.

Here, neither the front label of Westbrae's Vanilla Soymilk nor the ingredient panel claim to identify the predominate source of its vanilla flavor other than that it is "Natural Vanilla Flavor With Other Natural Flavors." The Complaint and testing results on which it relies do not claim that there is no natural vanilla in the product but only that it is a *de minimis* amount. The Complaint further urges that the label and ingredient panel are materially misleading because natural vanilla is not the predominate source of the vanilla flavor. But the Complaint concedes that "only 1-2% of vanillin in commercial use is vanillin obtained from the vanilla plant . . . ." (Compl. ¶ 26). A reasonable consumer would not draw a conclusion as to the quantity or predominance of the natural vanilla flavor so long as some of the vanilla flavor was derived from natural vanilla and the balance from other natural flavors. Like the product's labeling in Steele, Pichardo and Cosgrove, Westbrae's product makes a representation regarding its flavor and does not imply or represent the source of that flavor comes exclusively or predominantly from natural vanilla.

Barreto points to Sharpe v. A&W Concentrate, __F. Supp. 3d __, 19-cv-768, 2020 WL 4931045 (E.D.N.Y. Aug. 24, 2020) in which the Court found that plaintiff adequately alleged the label of a vanilla-flavored soda brand was misleading. (Doc 28). The front label of the product stated it was "MADE WITH AGED VANILLA," which the court interpreted to mean natural vanilla. The complaint also alleged, relying on the results of a GS-MS analysis, that the vanilla flavor came predominately from an artificial, synthetic ingredient called "ethyl vanillin." Sharpe, 2020 WL 4931045, at *2. The facts alleged concerning Westbrae's product are distinguishable. The front label does not contain any representations regarding the source or age of the vanilla flavor and while the Complaint alleges that the product contains added vanillin, as discussed above, it does not plausibly allege that the vanillin is derived from artificial sources.

Apart from the vanilla jurisprudence, Barreto argues the label here is similar to other non-vanilla cases where the court found a food product's label to be misleading. The Court need not discuss these district court decisions arising in factually inapposite contexts with complaints with dissimilar allegations. See, e.g., Koenig v. Boulder Brands, Inc., 995 F. Supp. 2d 274, 287–88 (S.D.N.Y. 2014) (milk labelled as "fat free milk" actually contained more than .5g of fat); In re Frito-Lay N. Am., Inc. All Natural Litig., 2013 WL 4647512, at *15 (E.D.N.Y. Aug. 29, 2013) (product represented as "all natural" when in fact it was alleged to contain unnatural, genetically modified substances); Izquierdo v. Panera Bread Co., 450 F. Supp. 3d 453, 462–64 (S.D.N.Y. 2020) ("Blueberry Bagel" contained primarily imitation blueberries).

Lastly, Barreto contends that Westbrae's labeling violates FDA's regulations governing how flavorings in food are labeled. Barreto specifically relies on 21 C.F.R. § 101.22(i), which regulates how a manufacturer or distributer must label foods "with respect to the primary recognizable flavor(s)." If a product "designate[s] the type of flavor in the food other than through

the statement of ingredients, such flavor shall be considered the characterizing flavor." 21 C.F.R. § 101.22(i). The parties do not dispute that vanilla is the characterizing flavor of Westbrae's product.  If a food "contains no artificial flavor which simulates, resembles or reinforces the characterizing flavor, the name of the food on the principal display panel or panels of the label shall be accompanied by the common or usual name of the characterizing flavor, e.g., 'vanilla . . . .'" 21 C.F.R. § 101.22(i)(1).  In this case, the front label of Westbrae's product is labeled "Vanilla Soymilk."  However, Barreto alleges additional disclosures were required on the product's front label under 21 C.F.R. § 101.22(i)(1)(i)–(iii).

But the Complaint does not and could not allege a claim for private enforcement of FDA regulations.  Under 21 U.S.C. § 337(a) enforcement of the regulations is reserved to the federal government.  Nor does New York's General Business Law fill the gap by creating a state law claim solely as a result of a violation of federal labelling regulations.   To state a GBL claim, the challenged act must be "inherently deceptive," and "such acts cannot be re-characterized as 'deceptive' simply on the grounds that they violate another statute which does not allow for private enforcement."  Nick's Garage, Inc. v. Progressive Casualty Ins. Co., 875 F.3d 107, 127–28 (2d Cir. 2017) (discussing Broder v. Cablevision Sys. Corp., 418 F.3d 187 (2d Cir. 2005) and Conboy v. AT&T Corp., 241 F.3d 242 (2d Cir. 2001)).

The Second Circuit has explained the relationship between a GBL claim and violations of other statutes that do not provide a private right of action:

> [A] GBL claim is viable where the plaintiff 'make[s] a free-standing claim of deceptiveness under GBL § 349 that happens to overlap with a possible claim' under another statute that is not independently actionable, but fails where the violation of the other statute by conduct that is not inherently deceptive is claimed to constitute a deceptive practice that serves as the basis for the GBL § 349 claim.

Id. (quoting Broder, 418 F.3d at 200).

Barreto cannot state a claim here because, for reasons described above, the conduct alleged to violate the FDA regulations is not so inherently deceptive as to be misleading to a reasonable consumer under GBL §§ 349–50.  See Pichardo, 2020 WL 6323775, at *3 n.6 (explaining whether the labeling of defendant's products violates FDA regulations does not determine whether it is misleading under GBL §§ 349–350); Steele, 472 F. Supp. 3d at 50 ("The point here is not conformity with this or that standard (which is left to the authorities to regulate) but whether the marketing presentation was deceptive."); Sharpe, 2020 WL 4931045, at *7 n.8 ("To the extent plaintiffs bring a separate cause of action premised on an alleged violation of a [FDA] regulation, the claim is dismissed."); see also North Am. Olive Oil Ass'n v. Kangadis Food Inc., 962 F. Supp. 2d 514, 519 (S.D.N.Y. 2013) (finding that plaintiff failed to show a likelihood of success on the merits that a product's labeling was impermissibly misleading to consumers under GBL §§ 349–50 even though defendant's product labeled as "100% Pure Olive Oil" violated FDA standards).

Because the Court concludes that the product's labeling would not mislead a reasonable consumer, it will dismiss Barreto's claims under sections 349 and 350 of the GBL.  It is unnecessary to reach Westbrae's argument that Barreto's state claims are preempted by federal law.

II.     Barreto's Remaining Claims are Dismissed

The Complaint also brings claims for negligent misrepresentation, fraud, breach of express and implied warranty, and unjust enrichment. Barreto's remaining claims are similarly premised on the assertion that Westbrae's labeling is materially misleading for reasons discussed in connection with her GBL claims.  Because the Court has already determined that Barreto has failed to allege that the product's labeling would be likely to deceive or mislead a reasonable

consumer, these causes of actions are also dismissed for the reasons already stated. The Court also concludes that each of the claims fails for separate reasons and addresses each claim below.

       A.      <u>Breach of Express Warranty and Implied Warranty of Merchantability</u>

An express warranty is an "affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain." N.Y. U.C.C. § 2-313(1)(a). Barreto alleges that the labeling of "Vanilla Soymilk" created an express warranty that the product used solely natural vanilla to flavor the soymilk.

The express warranty claim fails as Westbrae's product does not state it is made exclusively with natural vanilla and a reasonable consumer would not interpret the representation of "Vanilla Soymilk" to make this claim. <u>See</u> <u>Ault v. J.M. Smucker Co.</u>, 13-cv-3409 (PAC), 2014 WL 1998235, at *6 (S.D.N.Y. May 15, 2014) ("Generalized statements by the defendant, however, do not support an express warranty claim if they are such that a reasonable consumer would not interpret the statement as a factual claim upon which he or she could rely.").

Westbrae also moves to dismiss Barreto's claim for breach of an implied warranty of merchantability. Barreto has failed to address this claim in its opposition papers and therefore the Court will deem the claim abandoned. <u>See, e.g.</u>, <u>Felix v. City of New York</u>, 344 F. Supp. 3d 644, 654 (S.D.N.Y. 2018) ("[A court] may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.").

Regardless, Barreto has failed to state a claim of breach of the implied warranty of merchantability. N.Y. U.C.C. § 2-314. There are no allegations that the soymilk beverage was unfit for the ordinary purpose of such goods, namely, human consumption. To the extent the

Complaint alleges that the product does not conform to any promises or affirmations of fact made on the label, Barreto's claims fails for the same reasons as its express warranty claims.[5]

        B.        <u>Negligent Misrepresentation</u>.

Under New York law, in order to state a claim for negligent misrepresentation, a plaintiff must allege, "(1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information." <u>Mandarin Trading Ltd. v. Wildenstein</u>, 16 N.Y.3d 173, 180 (2011). To plead a special relationship, plaintiffs must show that they were a "known party or parties." <u>Sykes v. RFD Third Ave. 1 Assoc., LLC</u>, 15 N.Y.3d 370, 373 (2010). Being "one of a class of potential" recipients of a statement will not suffice. <u>Westpac Banking Corp. v. Deschamps</u>, 66 N.Y.2d 16, 19 (1985).

The Complaint fails to allege a special or privity like relationship between the parties. Barreto does not allege that she had any contact with Westbrae or its representatives, nor does she allege that she purchased the product directly from Westbrae. <u>See</u> <u>Secs. Investor Protection Corp. v. BDO Seidman L.P.</u>, 222 F.3d 63, 74–75 (2d Cir. 2000) (requiring known party to be "part of an identifiable, particularized group rather than a 'faceless or unresolved class of persons'"); <u>Segedie v. Hain Celestial Grp., Inc.</u>, 14-cv-5029 (NSR), 2015 WL 2168374, at *14

---

[5] The Complaint also purportedly brings a claim under the Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, <u>et seq</u>. Neither party addresses this claim in its briefing on the motion to dismiss. Any claim brought under the Magnuson Moss Warranty Act will also be dismissed. <u>See</u> <u>Garcia v. Chrysler Gr. LLC</u>, 127 F. Supp. 3d 212, 232 (S.D.N.Y. 2015) ("To state a claim under the MMWA, plaintiffs must adequately plead a cause of action for breach of written or implied warranty under state law.").

(S.D.N.Y. May 7, 2015) ("Defendant's obligation to label products truthfully does not arise from any special relationship. There is nothing approximating privity between the parties.").

Barreto contends that a claim for negligent misrepresentation can be stated even in the absence of a special relationship. The Second Circuit "has held that a 'sparsely pled' special relationship of trust or confidence is not fatal to a claim for negligent misrepresentation where 'the complaint emphatically alleges the other two factors enunciated in [Kimmel v. Schaefer, 89 N.Y.2d 257, 263 (1996)].'" Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 188–89 (2d Cir. 2004). Under Kimmel, a court considers whether the person making the representation holds "unique or special expertise" and whether that person was "aware of the use to which the information would be put and supplied it for that purpose." Id. (citing Kimmell, 89 N.Y.2d at 263–64). But "where, as here, a 'special relationship' is nowhere pled, and the allegations with respect to the other Kimmell factors are soft, a claim for negligent misrepresentation is dismissible under Rule 12(b)(6)." Id. Barreto's claim for negligent misrepresentation is therefore dismissed for the separate reason that a special relationship "is nowhere pled."

    C.    <u>Common Law Fraud</u>.

Under New York law, "[t]he elements of a fraud cause of action consist of 'a misrepresentation or a material omission of fact which was false and known to be false by [the] defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury.'" Pasternack v. Lab. Corp. of Am. Holdings, 27 N.Y.3d 817, 827 (2016) (alteration in original) (quoting Mandarin Trading Ltd. v. Wildenstein, 16 N.Y.3d 173, 178 (2011)).

A claim of fraud must be alleged with the particularity required by Rule 9(b), Fed. R. Civ. P., which "requires that the plaintiff (1) detail the statements (or omissions) that the

plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC, 783 F.3d 395, 403 (2d Cir. 2015) (quotation marks omitted). Rule 9(b) permits a plaintiff to allege scienter generally, but the Second Circuit has "repeatedly required plaintiffs to plead the factual basis which gives rise to a strong inference of fraudulent intent." United States ex rel. Tessler v. City of New York, 712 Fed. App'x 27, 29 (2d Cir. 2017) (summary order) (quoting O'Brien v. Nat'l Prop. Analysts Partners, 936 F.2d 674, 676 (2d Cir. 1991)).

Barreto's fraud claim is separately dismissed because it fails to plead facts that give rise to a strong inference of fraudulent intent. The complaint contains only conclusory allegations that "Defendant's fraudulent intent is evinced by its failure to accurately identify the Products on the front label when it knew this was not true." (Compl. ¶ 170). Barreto also makes general allegations regarding "food fraud" and the flavor industry's scheme to use alternatives to natural vanilla but fails to tie these facts to the defendant's conduct or intent in any way. (See generally Compl. ¶¶ 31–54).

### D. Unjust Enrichment

Westbrae argue that Barreto's unjust enrichment claim should be dismissed because it is duplicative of her other claims. "To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc., 448 F.3d 573, 586 (2d Cir. 2006) (internal citation and quotations omitted). Under New York law unjust enrichment is "available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the

plaintiff." Corsello v. Verizon N.Y., Inc., 18 N.Y.3d 777, 790 (2012). Unjust enrichment is not a "catchall cause of action to be used when others fail." Id.

Barreto's unjust enrichment claim is based on the same allegations as her other claims for consumer deception. (Compl. ¶ 173) ("Defendant obtained benefits and monies because the Products were not as represented and expected . . . ."). This merely restates her core theory of deception, and "if plaintiffs' other claims are defective, an unjust enrichment claim cannot remedy the defects." Corsello, 18 N.Y.3d at 791; see also Alce v. Wise Foods, Inc. 17-cv-2402 (NRB), 2018 WL 1737750, at *11–12 (S.D.N.Y. Mar. 27, 2018) (dismissing unjust enrichment claim as duplicative of tort and GBL §§ 349 and 350 claims); Goldemberg v. Johnson & Johnson Consumer Co., Inc., 8 F. Supp. 3d 467, 483–84 (S.D.N.Y. 2014) (same). Accordingly, the Court dismisses Barreto's unjust enrichment claim for the separate reason that it is duplicative.

III.     Plaintiff Does Not Have Standing to Pursue Injunctive Relief

Westbrae has moved to dismiss pursuant to Rule 12(b)(1), Fed. R. Civ. P on grounds that Barreto lacks standing. Barreto seeks injunctive relief against Westbrae "to remove, correct and/or refrain from the challenged practices and representations . . . ." (Compl at 31). Barreto's claim for injunctive relief fails because the underlying claims on which injunctive relief is sought have failed. The Court also concludes that Barreto lacks standing to pursue injunctive relief.

"A plaintiff seeking to represent a class must personally have standing" to pursue "each form of relief sought." Nicosia v. Amazon.com, Inc., 834 F.3d 220, 239 (2d Cir. 2016). "To seek injunctive relief, a plaintiff must show that he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical." Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009). This requirement "cannot

be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again."  City of Los Angeles v. Lyons, 461 U.S. 95, 111–12 (1983).  "[P]ast injuries . . . do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that she is likely to be harmed again in the future in a similar way."  Nicosia, 834 F.3d at 239.

   The Complaint fails to assert that Barreto intends to buy Westbrae's product in the future.  Instead, Barreto only alleges that if she would have known the truth regarding the product's labeling, she would not have purchased it or would have paid less.  (Compl. ¶ 120).  Barreto has therefore failed to establish further injury because she does not "intend[] to [purchase the offending product] in the future."  Kommer v. Bayer Consumer Health, 710 Fed. App'x 43, 44 (2d Cir. 2018) (second alteration in original) (quoting Nicosia, 834 F.2d at 239) (concluding that plaintiff lacked standing to seek injunctive relief where he purchased an allegedly deceptively packaged product).

   In Barreto's opposition brief, she contends the Complaint alleges that she would purchase the soymilk product in the future if she "could trust the label."  (Doc 21 at 28).  Drawing all reasonable inferences in plaintiff's favor, this contention is still insufficient to confer standing.  While some districts courts have found similar allegations are enough to establish standing, the Court agrees with the many courts in this district that have concluded a plaintiff fails to establish a threat of future injury under such circumstances based on controlling precedent.  See e.g., Hess v. Godiva Chocolatier, Inc., 463 F. Supp. 3d 453, 465–66 (S.D.N.Y. 2020) (concluding that plaintiff's alleged injury was "hypothetical" and an "allegation of possible future injury" insufficient to create standing); Lugones v. Pete & Gerry's Organic, LLC, 440 F. Supp. 3d 226, 238 (S.D.N.Y. 2020); Izquierdo, 450 F. Supp. 3d at 460.

CONCLUSION

Defendant's motion to dismiss the First Amended Complaint is GRANTED. The Clerk is directed to terminate this motion. (Doc 18). The Clerk shall enter judgment for the defendant and close the case.

SO ORDERED.

*P. Kevin Castel*
P. Kevin Castel
United States District Judge

Dated: New York, New York
        January 7, 2021